**STOTLER AND COMPANY,**
**Plaintiff–Appellant,**
**Cross–Appellee,**

v.

**William J. ABLE, Defendant–Appellee,**
**Cross–Appellant.**

**No. 87–2460.**

United States Court of Appeals,
Seventh Circuit.

Argued June 6, 1988.

Decided Feb. 23, 1989.

---

**2.** In any event, there was no time in the short span covered in this case for any pension to vest.

Stephen D. Libowsky, Katten, Muchin & Zavis, Michael W. Coffield, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendant-appellee, cross-appellant.

Thomas Kotter, Chicago, Ill., for plaintiff-appellant, cross-appellee.

Before CUMMINGS, FLAUM and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Stotler and Company, a futures commission merchant, brought an action in the district court to recover an alleged deficit in William J. Able's discretionary trading account. Stotler received a writ of attach-

ment, freezing Able's assets at J.F. Dalton Associates' commodities futures trading house. The district court later dismissed the action and vacated the writ of attachment. However, because of confusion surrounding the events leading up to the dismissal and occurring immediately thereafter, Dalton failed to release the funds before Stotler filed another suit and received another writ of attachment.

Able filed a motion to enforce the district court's order dismissing the suit and vacating the original writ of attachment and to hold certain persons in contempt. The district court denied Able's motion, as well as Stotler's oral motion for sanctions against Able for filing the enforcement/contempt motion. Both parties appeal their adverse rulings. We affirm.

## I. *BACKGROUND*

The following facts are taken from Judge Rovner's findings of fact which were entered on July 21, 1987. The parties do not contest her findings but instead challenge her legal conclusions which we will discuss below.

The plaintiff, Stotler and Company, is a futures commission merchant and an Illinois corporation. The defendant, William J. Able, is a California citizen. Able opened a discretionary trading account with Stotler through Stotler's introducing broker, Saratoga Futures, Inc., a California corporation. The intervening plaintiff, J.F. Dalton Associates of Chicago, is one of several commodities futures trading houses at which Able had placed assets.

On August 15, 1986, Stotler filed an original action in the United States District Court for the Northern District of Illinois, concerning an alleged deficit in Able's trading account. On June 17, 1987, Judge Getzendanner granted Stotler's motion for an order of attachment, freezing Able's assets at several commodities futures trading houses, including Dalton.

Approximately one week later, upon Able's motion, Judge Getzendanner dismissed Stotler's suit, determining that Stotler had failed to join Saratoga whom Judge Getzendanner deemed to be an indispensable party to the action. Consequently, the writ of attachment was dissolved. The attorneys for Able and Stotler immediately telephoned Mr. Kimmelman, an upper level supervisor at Dalton, and informed him that Judge Getzendanner had dismissed the suit against Able in its entirety and that the writ of attachment had been vacated. Subsequently, Stotler's attorney sent a letter to Mr. Kimmelman confirming the district court's order. After Mr. Kimmelman spoke with the attorneys and actually received written confirmation that the funds could be released, Dalton released Able's assets.

On Wednesday, June 24, 1987—the day following Judge Getzendanner's dismissal of the first action—Stotler filed a new complaint in the Circuit Court of Cook County, Illinois. The next day, June 25, 1987, Stotler obtained an *ex parte* writ of attachment in the state court action, again freezing Able's assets at Dalton.

On Friday, June 26, 1987, Able removed the state court action to the United States District Court for the Northern District of Illinois. On the same day, Able filed an emergency motion to quash the writ of attachment issued by the state court. Later that Friday afternoon, Judge Rovner heard that motion and, ruling from the bench, held: (1) that the action was properly removed from the Circuit Court of Cook County; (2) that Stotler was collaterally estopped to relitigate the issue of whether Saratoga was an indispensable party; and (3) that, pursuant to Judge Getzendanner's holding in the earlier action, Saratoga was indeed an indispensable party and that the present court action likewise had to be dismissed for failure to join Saratoga. Thereafter, Judge Rovner dismissed the action and vacated the state court's writ of attachment. The judgment, in the form of a minute order,[1] was filed and notices were

1. Judge Rovner's minute order stated:
   Hearing on emergency motion held. For the reasons stated in open Court, this action

   [pending between Able and Stotler] is dismissed without prejudice pursuant to Fed.R. Civ.P. 12(b)(7). The order of attachment is

mailed that same afternoon. However, the order was not docketed until four days later on Tuesday, June 30, 1987.

At the close of the Friday afternoon hearing, Judge Rovner ordered counsel for Stotler to join counsel for Able in making a telephone call to Dalton's offices to inform it that the state court writ of attachment had been vacated by the district court. Immediately, Mr. Goldberg, an attorney for Able, and Mr. Kolter, an attorney for Stotler, telephoned Dalton's offices. They spoke with Mr. Collins, the operations manager for Dalton, informing him of what had transpired and explaining that the writ of attachment was no longer in effect. Mr. Collins had experienced no previous contact with either of the attorneys and did not know whether they were who they purported to be.

Mr. Collins telephoned his superior, Mr. Kimmelman, who was home ill. Mr. Kimmelman informed Mr. Collins that he should obtain in writing proof that the writ of attachment was no longer effective. Apparently, Mr. Kimmelman's instructions reflected the procedures followed when Judge Getzendanner vacated the earlier writ of attachment.

Later that same Friday afternoon, Mr. Collins received a call from Leslie Hayes, an associate of Able's. Ms. Hayes asked Mr. Collins to release Able's funds. Mr. Collins informed Ms. Hayes that he would not release the funds until he had written confirmation that the writ of attachment had been vacated.

Ms. Hayes then contacted Mr. Goldberg, one of Able's attorneys. Mr. Goldberg subsequently called the offices of Dalton again and spoke with Mr. Van Booren. Mr. Van Booren informed Mr. Goldberg that he did not have authority to release the funds and that such actions were outside his area of responsibility. Mr. Goldberg informed Mr. Van Booren that a copy of the district court's judgment dismissing the action and vacating the writ of attachment would be

hereby vacated pursuant to the dismissal. [Stotler's] motion to remand and for sanctions is denied as moot. [Able's] motion to quash writ is denied as moot.

delivered to Dalton's offices as soon as possible.

Late that same day, Able's attorneys obtained two copies of Judge Rovner's written judgment and instructed a messenger to deliver one of the copies to Mr. Collins at Dalton's offices. Mr. Collins read the minute order. Apparently, Mr. Collins did not understand its contents or its implications, perhaps in part because the judgment did not mention Dalton by name and also because he was unfamiliar with such legal maneuvering. Mr. Collins informed the messenger that he personally could not release the funds. When contacted later by Mr. Goldberg, he reiterated that statement.

After this development, Mr. Collins attempted to contact Mr. Kimmelman again, but was unable to reach him. He left a copy of the judgment on Mr. Kimmelman's desk for him to see upon his return to the office on Monday morning. Mr. Collins did not attempt to contact Mr. Kimmelman again during the weekend.

Mr. Kimmelman arrived at his office on Monday morning between 6:15 a.m. and 6:30 a.m. After examining the minute order, Mr. Kimmelman apparently did not understand why the writ of attachment had been issued by a *state* court, yet the minute order indicated that it was vacated by the United States District Court for the Northern District of Illinois. Mr. Kimmelman determined that he needed to contact Dalton's attorney prior to taking any action with regard to Able's account.

At approximately 7:30 a.m. Monday morning, Mr. Kimmelman received a call from Able personally, requesting that the funds in his account be released for withdrawal. Mr. Kimmelman informed Able that he could not release the funds until he had spoken to Dalton's counsel. Able contacted Mr. Freidman, his personal attorney, and informed him that Dalton refused to release his funds. At about 8:50 a.m., Mr. Freidman called Mr. Kimmelman and asked why Able's funds were not released. Mr.

(Order of June 26, 1987).

Kimmelman again stated that he could not release the funds until Dalton's counsel had an opportunity to review the status of the attachment.

At approximately 8:15 a.m. Monday morning, Mr. Kimmelman reached Mr. Taylor, Dalton's attorney. Mr. Taylor likewise was unaware that the state court proceeding had been removed to federal court on Friday, June 26, 1987. Thus, he too was confused by the presence of a federal court order dated June 26, 1987, dismissing the suit and vacating the writ of attachment issued by the state court on the previous day. He requested Mr. Kimmelman to forward all documents to him by messenger immediately.

Soon after speaking with Mr. Kimmelman, Mr. Taylor received a call from Mr. Freidman concerning Mr. Kimmelman's refusal to release the funds in Able's account. Mr. Freidman verified that the action had been removed to federal court. Immediately upon speaking with Mr. Freidman, Mr. Taylor called Stotler's attorney, Mr. Kolter. Mr. Kolter confirmed that the case had been removed to federal court and that the federal court had dismissed the action and vacated the writ of attachment. Mr. Kolter then informed Mr. Taylor that a new suit had been filed the previous Friday in state court, following Judge Rovner's dismissal of the federal action. Mr. Kolter also stated that Stotler had obtained a writ of attachment early Monday morning from the state court and that the writ was about to be, or already had been served, upon Mr. Taylor's client, Dalton.

After completing his conversation with Mr. Kolter, Mr. Taylor unsuccessfully attempted to reach Mr. Kimmelman again. In the meantime, Mr. Kimmelman had been served with another writ of attachment, just as Mr. Kolter had predicted. Mr. Kimmelman telephoned Mr. Taylor, informing him that Dalton had been served with yet another writ of attachment. Mr. Taylor

asked Mr. Kimmelman to forward a copy of the writ and told Kimmelman not to release the funds pending further consultation with Mr. Taylor.

Thereafter, Dalton refused to allow Able to transfer the funds out of his account. Able then returned to the district court and filed an "Emergency Motion to Enforce Court Order of June 26, 1987," and filed a motion for an order to hold Stotler, Dalton, Kimmelman, and Collins in contempt. The district court conducted a hearing on Tuesday, June 30, 1987.[2]

On July 21, 1987, Judge Rovner entered her findings of fact and conclusions of law and denied Able's motion. Judge Rovner held that Stotler had not disregarded the court's June 26 order. Judge Rovner found that Stotler had complied fully with her order because Stotler's attorneys had made the requisite phone call. She also found that Stotler had not contacted Dalton as part of a plan to delay the release of the funds until a new writ of attachment was issued. In fact, Stotler's only contact with Dalton occurred when Mr. Taylor—Dalton's attorney—telephoned Stotler's attorney to determine why a federal district court had vacated the writ of attachment issued by a state court only four days earlier.

Judge Rovner also held that Dalton and its employees could not be found in contempt for their action or inaction. Judge Rovner found: (1) that Dalton was not a party to the action and had no opportunity to represent its interest in the proceedings; (2) that the order was intended to, and served only to, vacate the writ of attachment (the district court "was in no position to know whether Dalton had another legal basis for refusing to allow Mr. Able to withdraw those funds," and "could not and did not order Dalton to release the funds to Able"); and (3) that Mr. Kimmelman legitimately was confused by the federal court's

---

2. On June 30, 1987, the day of the hearing on the original "Emergency Motion to Enforce," Able filed an "Amended Emergency Motion to Enforce Court Order of June 26, 1987 and for an Order Holding Certain Respondents in Contempt." In that motion, Able argued that the

district court had the authority to order Dalton, a nonparty, to release the funds on June 26 pursuant to Rules 70 and 71 of the Federal Rules of Civil Procedure, and to find Dalton in contempt under those same provisions.

dismissal of a state court's writ of attachment. Consequently, Judge Rovner denied Able's motion in its entirety.[3]

Judge Rovner also denied the oral motion of Stotler, Dalton, Kimmelman, and Collins —made during the June 29 hearing—for sanctions against Able pursuant to Rule 11, 28 U.S.C. § 1927. Judge Rovner held that Able legitimately believed that the parties acted differently with respect to the release of these funds than they did when Judge Getzendanner had vacated an earlier writ of attachment. Judge Rovner concluded that Able's motion had "an adequate basis in fact and law" until all of the facts were disclosed at the formal hearing.

## II. DISCUSSION

Able appeals, arguing that the district court improperly denied its motion for an order of contempt against Stotler, Dalton, Kimmelman, and Collins.[4] Stotler also appeals, challenging Judge Rovner's denial of Rule 11 sanctions. We address each of their contentions separately.

### A. Able's Motion for Contempt

■ To hold a party in contempt, the district court "must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party in contempt violated." *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986) (quoting *H.K. Porter Co. v. National Friction Prods.*, 568 F.2d 24, 27 (7th Cir.1977)). A complaining party must prove that the order was violated by "clear and convincing" evidence. *See, e.g., United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir.), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985). A district court ordinarily does not have to find that the violation was "willful" to find a party in contempt, *see Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 n. 9 (7th Cir.1981), and it may find a party in civil contempt if he has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *American Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 (7th Cir.1982) (citation omitted).

■ "A district court's decision on a contempt petition 'is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous.'" *Ferrell*, 785 F.2d at 1378 (quoting *Walaschek & Assocs. v. Crow*, 733 F.2d 51, 53 (7th Cir.1984) (citation omitted)); *see also Bass*, 688 F.2d at 517 n. 5 ("In reviewing the district court's findings we are bound by the 'clearly erroneous' standard...."). "The court's factual determinations are accorded great weight on appeal when they depend on credibility determinations based on the demeanor of witnesses at trial." *Huebner*, 752 F.2d at 1241; *Hayden v. Oak Terrace Apts.*, 808 F.2d 1269, 1271 (7th Cir.1987). A district court's findings are clearly erroneous only when, "'although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Hayden*, 808 F.2d at 1271 (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)). We evaluate Able's arguments in light of these principles.

### 1. Dalton, Kimmelman, and Collins

Able first contends that Judge Rovner failed to find Dalton and its employees in

---

**3.** Judge Rovner also stated that the failure of Able's counsel to deal with Dalton through Dalton's counsel was not only an arguable breach of professional ethics, but was the probable primary cause of Able's inability to effectuate the release of his funds from Dalton after the district court vacated the state court attachment order. Judge Rovner concluded that Able's misfortunes occurred at his own hands. However, she also stated that to the extent Dalton's actions justified a finding of contempt, equity dictated that she find against Able because of his attorneys' repeated violations of the disciplinary rules requiring them to deal solely with Dalton through its counsel.

**4.** Ordinarily, "a judge's refusal to hold a party in civil contempt of court is not an appealable final order...." *In re Xonics, Inc.*, 813 F.2d 127, 130 (7th Cir.1987). However, when no other parts of the litigation remain to be resolved, this court has jurisdiction to hear an appeal of that issue. *Id.; see also Szabo v. United States Marine Corp.*, 819 F.2d 714 (7th Cir.1987).

contempt because she erroneously believed that she was "in no position" to order Dalton to do anything when she dismissed the suit on June 26. Able then contends that Dalton violated the judgment because it clearly had knowledge of the court's order—Able's messenger delivered a copy of the minute order to Mr. Collins on Friday afternoon. Furthermore, Dalton "abetted" Stotler in delaying the release of the funds until a subsequent writ of attachment could be obtained. Able concludes that under these circumstances Judge Rovner would have found Dalton and its employees in contempt if she realized that she in fact possessed the authority to do so.

■ We agree with Able that under certain circumstances Rules 70 and 71 of the Federal Rules of Civil Procedure permit a district court to find a nonparty in contempt. Rule 70 permits a court to find a *party* in contempt if he fails to honor a court's order. Rule 71 provides that "when obedience to an order may be lawfully enforced against a person who is not a party, that person is liable to the same process for enforcing obedience to the order as if a party." However, Rule 71 does not define the circumstances under which an order "may be lawfully enforced," instead leaving that issue to the enforcing court. 12 C. Wright & A. Miller, Federal Practice and Procedure § 3031 (1973).

We also agree with Able that ordinarily a court may find a nonparty in contempt if that person has "actual knowledge" of the court order and "either abets the [party named in the court order] or is legally identified with him." *See, e.g., Quinter v. Volkswagen of Am.,* 676 F.2d 969, 972 (3d Cir.1982) (court finding that an expert witness was "legally identified" with both the plaintiff and the plaintiff's attorney, justifying a finding of contempt); *see also NLRB v. Sequoia Dist. Council of Car-*

*penters,* 568 F.2d 628, 633 (9th Cir.1977); 12 C. Wright & A. Miller, Federal Practice and Procedure § 3033 (1973). *Accord Waffenschmidt v. MacKay,* 763 F.2d 711, 717 (5th Cir.1985) (discussing contempt power in a Rule 65(d) injunction context), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771 (1986). However, we disagree with Able that Judge Rovner was "in a position" to hold Dalton and its employees in contempt.

■ For Judge Rovner to find Dalton and its employees in contempt pursuant to Rule 71, Able had to prove that the order was enforceable against Dalton as if it were a party.[5] However, Judge Rovner found, and we agree, that her June 26 order did not direct Dalton to perform any specified action. The judgment of dismissal did not mention Dalton and did not specify any course of action to be undertaken by any person. Instead, Judge Rovner merely dismissed the suit. Thus, Able could not prove that the judgment in this case " 'set[ ] forth in specific detail an unequivocal command.' " *Ferrell,* 785 F.2d at 1378 (citation omitted).

■ Even if we held that Judge Rovner erroneously refused to find a clear and specific command to Dalton, we cannot conclude that Dalton and its employees failed to exercise "reasonable diligence and energy" to accomplish what the judgment contemplated. We believe that Judge Rovner reviewed all of the facts and circumstances, in light of Dalton's position as a nonparty, and properly refused to find Dalton and its employees in contempt.

Prior to receiving a copy of the judgment, the attorneys for Able and Stotler telephoned Dalton's offices after the hearing and spoke with Dalton's operations manager, Mr. Collins. Mr. Collins was un-

---

5. Able does not contend that Dalton is "legally identified" with Stotler. However, Able does argue that Dalton "aided and abetted" Stotler "to thwart implementation" of Judge Rovner's order. We have considered Able's arguments that Stotler refused to comply with the "intent" of the order by refusing to send a confirmation letter at Able's request and that Stotler called Dalton on two occasions to insure that Stotler's

latest writ of attachment from the state court arrived before the funds were released. We—like Judge Rovner who found that the only contact between Dalton and Stotler occurred at Dalton's instance to confirm that the former state action had been removed to federal court—dismiss these contentions as unsupported by the record and unmeritorious.

familiar with the legal action between Able and Stotler—his superior, Mr. Kimmelman, had handled the earlier writ of attachment and its subsequent dissolution by Judge Getzendanner.[6] Mr. Collins did not know whether the attorneys on the phone were who they were purported to be and he reasonably delayed action on the matter until Mr. Kimmelman could be consulted. Furthermore, Mr. Collins reasonably refused to release the funds until he received written confirmation from the parties as Mr. Kimmelman had received when Judge Getzendanner dismissed the earlier suit.[7] Therefore, we conclude that Mr. Collins acted with reasonable diligence in his attempts to comply with an ambiguous court directive which was not directed at Dalton specifically.

We also believe that Mr. Kimmelman acted reasonably when he reviewed the matter on Monday, June 29, 1987. When Mr. Kimmelman arrived at Dalton's offices, he immediately reviewed the judgment and referred the matter to Dalton's attorney. Mr. Kimmelman legitimately was confused because the existing writ of attachment had been issued by a state court on June 25, 1987, and yet had been ordered vacated by a federal district court on Friday, June 26, 1987. His actions to review the matter and refer it to Dalton's counsel indicate the sort of "reasonable diligence" which precludes a finding of contempt.

Dalton's attorney likewise was confused by the nature of these proceedings, in part because he was not aware of the June 26 motions and hearings. Before Dalton's attorney had even received and reviewed the documents verifying the validity of the June 26, 1987 order and its effect, Stotler had filed a third action in Illinois state court and had received yet another writ of attachment freezing Able's funds in Dalton's possession. Under the circumstances of this case, we believe that Dalton and its employees acted with reasonable diligence at all times and could not properly be held in contempt.[8]

### 2. *Stotler*

■ We also believe that Judge Rovner properly held that Stotler had not violated the judgment of dismissal. On its face, the written judgment merely dismissed the suit. It did not require Stotler to perform any specified actions. Furthermore, Stotler complied to the letter with Judge Rovner's oral order that Stotler's attorneys join Able's attorneys in making a telephone call to Dalton, telling it that the suit had been dismissed. We hold that Judge Rovner properly refused to find Stotler in contempt.

### B. *Stotler's Motion for Rule 11 Sanctions*

■ Rule 11 of the Federal Rules of Civil Procedure requires a party represented by an attorney to sign every pleading, motion, and other paper submitted to the court. This signature certifies that "the signer has read the pleading, motion, or other paper" and:

> that to the best of his knowledge, information, and belief formed after reasonable inquiry, the pleading, motion, or other paper is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modifi-

---

**6.** On that Friday afternoon, Mr. Kimmelman was ill and unavailable for personal, immediate, and continued consultation in the present matter.

**7.** Able's failure to provide written confirmation—from all parties or the court, or both—directed to Dalton's counsel or Mr. Kimmelman resulted in Mr. Collins' prudent course of action. A photocopy of a sparse minute order, phrased in disjointed legal terminology and directed to a nonlawyer who was unfamiliar with the ongoing action, does not reflect the sort of written confirmation needed by a business entity which will face numerous legal problems and substantial economic woes if it releases funds which a court intends to leave frozen.

**8.** Although neither the parties or the district court addressed the issue, we believe that the court's judgment of dismissal may not have been "effective" at the time Able filed his motions for enforcement and contempt because the judgment had not been docketed. *See* Fed.R. Civ.P. 58. However, because we agree with the reasoning employed by Judge Rovner in her findings of fact and conclusions of law, we need not analyze the implications of the effect of Rule 58 in this case.

cation, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay....

Fed.R.Civ.P. 11. "The test is one of objective reasonableness under all the circumstances of the case." *FDIC v. Tekfen Constr. and Installation Co.*, 847 F.2d 440, 442 (7th Cir.1988) (citations omitted).

The standard of review in Rule 11 cases is not yet well settled in this circuit. This court consistently has held that we are to review factual determinations underlying the award using a "clearly erroneous" standard. *See, e.g., Tekfen Constr.*, 847 F.2d at 443; *Borowski v. DePuy, Inc.*, 850 F.2d 297, 304 (7th Cir.1988); *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1434 (7th Cir.1987) (citation omitted). However, this court has wavered on the proper legal standard applicable to review a final legal determination that sanctions are proper. *Compare Brown*, 830 F.2d at 1434; *Szabo Food Serv. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir.1987), *cert. dismissed*, —— U.S. ——, 108 S.Ct. 1101, 99 L.Ed.2d 229 (1988) *with Tekfen Constr.*, 847 F.2d at 443; *Borowski*, 850 F.2d at 304; *In re Ronco*, 838 F.2d 212, 217 (7th Cir. 1988).[9]

In this case, however, we need not concern ourselves with the "proper" standard of review. No matter whether we employ an abuse of discretion standard or review the case *de novo*, we conclude that Rule 11 sanctions were inappropriate.[10]

Rule 11 contains two grounds for sanctions: a "frivolousness clause" and an "improper purpose" clause. In the case before us, Stotler alleges that Able violated the "frivolousness clause" which is composed

of two subparts: (1) whether the party or attorney made a reasonable inquiry into the facts, and (2) whether the party or attorney made a reasonable inquiry into the law. *Brown*, 830 F.2d at 1435.

To determine whether the attorney made a reasonable inquiry into the facts of a case, a district court should consider:

Whether the signer of the documents had sufficient time for investigation; the extent to which the attorney had to rely on his or her client for the factual foundation of the pleading, motion, or other papers; whether the case was accepted from another attorney; the complexity of the facts and the attorney's ability to do a sufficient pre-filing investigation; and whether discovery would have been beneficial to the development of the underlying facts.

*Id.* (citations omitted).

Furthermore, to determine whether an attorney made a reasonable inquiry into the law, the district court should consider:

The amount of time the attorney had to prepare the document and research the relevant law; whether the document contained a plausible view of the law; the complexity of the legal questions involved; and whether the document was a good faith effort to extend or modify the law.

*Id.* (citations omitted).

In this case, Judge Rovner found that at the time that Able filed his emergency motion he was aware of facts which tended to suggest that Dalton's employees were acting differently with regard to the writ of attachment vacated by Judge Rovner than with regard to the writ of attachment va-

---

**9.** The latter line of cases has noted that "the standard is reasonableness under all the circumstances, and those circumstances are best defined by the district court." *Tekfen Constr.*, 847 F.2d at 443. "[T]he decision whether there has been a [Rule 11] violation is a judgment call." *Borowski*, 850 F.2d at 304 (quoting *In re Central Ice Cream Co.*, 836 F.2d 1068, 1072 (7th Cir. 1988)). " '[T]he trial court alone has an intimate familiarity with the relevant proceedings.' " *Id.* (quoting *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir.1987)). These panels conclude that "the ultimate findings regarding sanctions should receive deference and be re-

jected only if the district court has abused its discretion." *Tekfen Constr.*, 847 F.2d at 443.

**10.** We do note, however, that once a district court finds that Rule 11's requirements have been violated it is not free to decline to enter a sanction, "and *that* action may be reviewed *de novo*." *Tekfen Constr.*, 847 F.2d at 443 (citations omitted) (emphasis in original). Furthermore, once a district court determines that a violation has occurred and has entered sanctions the type or amount of the sanctions are reviewable only for an abuse of discretion. *Id.*

cated by Judge Getzendanner earlier that same week. Furthermore, Able personally had informed his attorney that Mr. Kimmelman had informed Able that Mr. Kimmelman was unable to speak with Dalton's attorney on Monday morning because the attorney was speaking with counsel for Stotler.

Judge Rovner stated that the evidence adduced by the parties at the hearing held upon the emergency motion explained the failure of Dalton's employees to release the funds as expeditiously as they had following the earlier release of the same assets. However, Judge Rovner also stated that she could perceive how Able might have believed that Dalton's failure to release Able's funds prior to the serving of the new writ of attachment on the following Monday was an unwarranted and inexcusable avoidance of the court's order of June 26, 1987—perhaps even as part of a plan in which Dalton had agreed not to release the funds until after Stotler had secured another writ of attachment in the state court.

Our review of the record supports Judge Rovner's finding that Able's beliefs were reasonable under the special circumstances of this case.[11] Rule 11 sanction serves an important purpose and is a tool that must be used with utmost care and caution. *See, e.g., Tekfen Constr.*, 847 F.2d at 443. When one considers the circumstances that developed out of Dalton and Stotler's attempts to comply with a judgment which specified no particular course of action for any of the entities involved—and the inferences which Able reasonably may have drawn from the actions of those entities involved, taken in light of the ongoing Stotler/Able saga—we cannot conclude that Able's reaction to these events was unreasonable.[12] Therefore, we hold that sanctions were inappropriate.[13]

## II. *CONCLUSION*

We hold that the district court properly denied Able's motion for enforcement of the June 26, 1987 order and his motion for an order finding Stotler, Dalton, Kimmelman, and Collins in contempt. The judgment of dismissal did not require Dalton—a nonparty—to undertake a specified course of action, nor did it even name Dalton. In addition, Dalton and its employees were reasonably diligent and energetic in their attempt to comply with the ambiguous document. Finally, Stotler—an actual party to the action—complied fully with the letter of the written judgment, as well as the district judge's oral directions.

We also hold that the district court properly denied Stotler's motion for Rule 11 sanctions. The actions of Stotler and Dalton in this instance, when compared with their actions taken with respect to the release of funds frozen pursuant to prior writs of attachment, and Able's reasonable belief of the facts as they then existed, made Rule 11 sanctions inappropriate.

The district court's decision is AFFIRMED.

---

**11.** If we were to apply an abuse of discretion standard, we would conclude that Judge Rovner's decision not to impose sanctions easily stands given her well-developed findings of fact and conclusions of law and her "intimate familiarity with the relevant proceedings." *Borowski*, 850 F.2d at 304.

**12.** Judge Rovner also found that Able's counsel had made a reasonable inquiry into prevailing law concerning a violation of a court order necessary to sustain a finding of civil contempt. We likewise believe that Able made a reasonable inquiry into the prevailing law of contempt prior to filing his emergency motion.

**13.** We opined earlier that Able's motions for contempt and enforcement may have been premature—an issue which we did not address to resolve the matters presented in these appeals. *Even if* we had held that the judgment of dismissal was not "effective" at the time Able filed his motion, we believe that sanctions would not be appropriate in this case because of the special circumstances which surrounded this litigation.