The BACHMAN COMPANY

v.

Kevin McGONIGLE.

Civ. A. No. 92–5280.

United States District Court,
E.D. Pennsylvania.

June 1, 1994.

G. Thompson Bell, III, Reading, PA, for plaintiff.

Arlene Beth Marcus, Boston, MA, for defendant.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

This civil action arose out of the failed franchisor-franchisee relationship between plaintiff Bachman Company ("Bachman") and defendant Kevin McGonigle ("McGonigle"). Beginning on January 3, 1994, and ending January 13, 1994, we held a jury trial in this matter. On January 14, 1994, we entered an order in which we molded the jury verdict into a verdict in favor of McGonigle and against Bachman in the amount of $282,870. Before us now is defendant McGo-nigle's Motion for Contempt and for Orders in Furtherance of Judgment.

## I. Background

While the underlying issues in this case are not pertinent to our disposition of defendant's motion, we briefly review aspects of the lawsuit, the trial, and certain post-trial events which have led to the present quandary.

McGonigle owned and operated a Bachman wholesale franchise ("wholesalership"). A dispute arose over McGonigle's efforts to properly market Bachman products. The dispute led to Bachman's termination of the wholesalership agreement and, ultimately, to the instant litigation.

At trial, plaintiff Bachman argued that defendant McGonigle breached the wholesaler contract by, among other things, not using his "best efforts" to sell Bachman products. McGonigle responded by asserting that, not only did he use his "best efforts" to sell Bachman products, but that plaintiff Bachman acted in a commercially unreasonable manner when it terminated the wholesaler contract and took over and operated McGonigle's business.

After the close of the evidence, the jury was instructed to determine whether McGonigle had breached the wholesaler agreement, and if so, whether Bachman incurred damages or lost profits as a result of such a breach. Secondly, the jury was instructed to determine whether Bachman acted in a commercially reasonable manner in terminating the wholesalership, and if it did not, to determine what damages McGonigle incurred as a result of such conduct on the part of the Bachman Company. In addition, the jury was given a special interrogatory which read as follows: "Indicate the net proceeds you find the defendant Kevin McGonigle would have received after deduction of sales costs and debts and liens from the fair market sale price of his business." (Plaintiff's Exhibit E, Special Verdict Questions). The issue concerning net business value stems from McGonigle's contractual rights following termination of the wholesalership agreement by Bachman for breach of contract.

Paragraph 10.3 the Wholesaler Agreement (Plaintiff's Exhibit B), entitled "Actions Following Termination," deals with Bachman's duties to operate the wholesalership, and McGonigle's rights to be compensated for the value of the wholesalership following termination. Paragraph 10.3 reads in relevant part:

> Termination under Sections 10.1 or 10.2 above shall require Bachman, within the limits of its ability to do so, to operate the business for the account of Wholesaler, deducting its reasonable expenses in connection with the operation thereof, and to sell Wholesaler's Wholesale Distribution Rights to a qualified purchaser at the best price which can reasonably be obtained after proper notice and advertisement. Said sale shall be for the account of Wholesaler, and *the proceeds of such sale, after deducting there from any monies owed by Wholesaler to Bachman, the amount of any outstanding liens, and the reasonable costs incurred in effecting the sale, shall be turned over to Wholesaler in exchange for a release of all rights and interest hereunder.*

(emphasis added). As of the date of trial, Bachman had not sold the McGonigle's wholesalership. Accordingly, the parties stipulated that, in its deliberations, the jury should determine the amount that McGonigle would be entitled to for the value of the wholesalership in accordance with the provisions of the Wholesaler Agreement that govern the sale of the wholesalership after a termination of the Wholesaler Agreement (the "Stipulation").[1] At trial, the parties presented testimony as to the value of the wholesalership.

In our charge to the jury, we instructed the jury about the Stipulation and stated that the jury should determine the net proceeds due McGonigle under the terms of the Wholesaler Agreement. We mirrored the contract language regarding the calculation of net proceeds:

> That would be the fair market value on the open market, less a ten percent transfer fee required by the contract, and also less any sales costs, debts and liens.

(Plaintiff's Exhibit D, Jury Charge, at 17). In our Special Verdict Questions, we again mirrored the contract language to direct the jury to determine the fair market value of the wholesalership, less sales costs and the amount of outstanding debts and liens.

During the jury deliberations, the parties requested clarification for the jury as to which debts and liens should be deducted in calculating net proceeds. We agreed to poll the jury after it returned its verdict to determine what the jury deducted from the fair market value of the wholesalership to calculate the net proceeds.

On January 13, 1994, when the jury concluded its deliberations, it rendered its verdict. The jury found that McGonigle had breached the contract, and awarded Bachman $22,050.00 in damages. The jury fixed the net proceeds due the defendant at $304,920.00 for the sale of his business. Finally, the jury determined that Bachman acted in a commercially reasonable manner in terminating the business.[2]

Following the rendering of their verdict, we asked the jury whether the debts and liens owed to "Bachman, the bank and others" were "taken into account" in making its calculations. (Plaintiff's Exhibit F, Trial Transcript at 7.) After the foreperson and members of the jury acknowledged that the jury had, in fact, made such deductions, we accepted the jury's verdict and entered the same upon the official records of the court. *Id.* On January 14, 1994, we entered an order in which we molded the verdict into a verdict in favor of McGonigle and against Bachman in the amount of $282,870. Neither party appealed this verdict nor has a motion

---

1. In addition to Paragraph 10.3, plaintiffs pointed to Paragraph 7.3, which is entitled "Transfer Fee." This paragraph states that as a condition precedent to any sale, transfer, assignment or other disposition of the franchise, Bachman is to be paid a ten percent transfer fee by McGonigle. The Wholesaler Agreement was extensively discussed at trial and received into evidence.

2. After hearing the trial evidence, the court made a general finding on the record that the plaintiff Bachman Company had not violated the Massachusetts Unfair or Deceptive Practices Law, Mass. Gen.L. ch. 93A, as alleged in Plaintiff's counterclaims.

for judgment as a matter of law under Fed. R.Civ.Proc. 50(b) or a motion for a new trial under Fed.R.Civ.Proc. 59 been filed.

Since that time, a dispute has arisen as to which party is responsible for the payment of two of Mr. McGonigle's debts: (a) a debt of $28,667.98, plus interest, to the Bank of Boston ("Bank of Boston debt"); (b) McGonigle's debt to Frank Kunkel and/or Wholesale Snax, Inc. ("Kunkel debt"). Both debts were incurred when McGonigle financed his purchase of the Bachman wholesalership.

Apparently, both the Bachman Company and Mr. Kunkel have taken the position that the Kunkel debt is a personal obligation of Mr. McGonigle and that the Bachman Company will not pay it. (Affidavit of Defendant's Counsel Arlene Beth Marcus, 2/17/94, ¶¶ 11–13). What's more, the Kunkel debt is now the subject of a pending Massachusetts State Court action, titled *Wholesale Snax, Inc. and Frank Kunkel v. Kevin McGonigle,*[3] in which plaintiffs are seeking payment of the Kunkel debt directly from McGonigle. It also appears that the Bachman Company refuses to pay the Bank of Boston debt. (Affidavit of Defendant's Counsel Arlene Beth Marcus, 2/17/94, ¶ 24).

On February 15, 1994, counsel for McGonigle received a check from Bachman in the amount of $282,870. (Affidavit of Defendant's Counsel Arlene Beth Marcus, 2/17/94, ¶ 21). However, as a result of the developments outlined above, and by agreement of Mr. McGonigle and Mr. Kunkel, the check has been placed in an escrow account pending the resolution of the dispute over responsibility for the Kunkel debt. In addition, Mr. Kunkel has recorded a lien against Mr. McGonigle under the Uniform Commercial Code. (Affidavit of Defendant's Counsel Arlene Beth Marcus, 2/17/94, ¶ 23).

These events have led to McGonigle's filing of the present motion. For the reasons that follow, we deny McGonigle's motion in its stated form, but will provide other relief under Fed.R.Civ.Proc. 60(b).

## II. Analysis

Defendant McGonigle brings his motion pursuant to Fed.R.Civ.Proc. 69 and 70. In particular, McGonigle asserts that Bachman's refusal to pay the Bank of Boston and Kunkel debts constitutes contempt in light of our January 14, 1994 order of judgment. Bachman argues that it cannot be held in contempt because it complied exactly with the order's directive—namely, to pay McGonigle $282,870. Bachman cites *Stotler and Co. v. Able,* 870 F.2d 1158 (7th Cir.1989) in which the Seventh Circuit held that in order to hold a party in contempt, a complaining party "must be able to point to a decree of the court which sets forth in specific detail an unequivocal command" and prove that the command was violated by "clear and convincing evidence." *Id.,* at 1163.

We are inclined to agree with Bachman that McGonigle's motion is inappropriate. In tendering to McGonigle the check for $282,870, Bachman has complied with the explicit directives of our order. Nonetheless, despite McGonigle's unavailing portrayal of his motion as a motion for contempt, we believe McGonigle may have raised valid grounds for post-trial relief. We believe that his motion is best characterized as a motion for relief from judgment or order pursuant to Fed.R.Civ.Proc. 60(b)(6).[4]

---

**3.** A copy of the complaint in this matter was attached to defendant McGonigle's motion as Exhibit E. According to the Complaint, Mr. Kunkel and Wholesale Snax, Inc. were the previous owners of Mr. McGonigle's wholesalership. In selling the wholesalership to Mr. McGonigle, Mr. Kunkel and Wholesale Snax Inc. provided financing to Mr. McGonigle in the amount of $304,036.00. (Defendant's Exhibit E, Barnstable Superior Court Complaint, at ¶¶ 6–11.) This apparently constitutes the Kunkel debt, and is consistent with McGonigle's trial testimony.

**4.** Rule 60(b)(6) reads:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons:

. . . . .

(6) any other reason justifying relief from the operation of the judgment.

Relief pursuant to subsection (6) is only available where subsections (1) through (5) do not apply. *Stradley v. Cortez,* 518 F.2d 488, 493 (3d Cir. 1975). As subsections (1) through (5) do not address the unusual situation which has arisen here, we believe subsection (6) is the appropriate subsection.

■ While not pled as a Rule 60(b) motion, we will deem McGonigle's motion for contempt as a Rule 60(b) motion. We are guided by the well-established federal rule, embodied in Fed.R.Civ.Proc. 8(f), that "all pleadings shall be so construed as to do substantial justice." Courts have long held that "the moving party's label for its motion is not controlling. Rather, the court will construe it, however styled, to be the type proper for the relief requested." *United States v. 1982 Sanger 24' Spectra Boat,* 738 F.2d 1043, 1046 (9th Cir.1984). In particular, the federal courts have recognized that post-trial motions can be recharacterized to enable the substance of the motion to be addressed. *See Smith v. United States Parole Com'n,* 721 F.2d 346, 348 (11th Cir.1983) ("if scrutiny of a post-trial motion suggests that it should be treated in a manner different than the label used by the party, the court may discard an inappropriate label to render a decision based upon the motion's substance."); *Glick v. White Motor Co.,* 458 F.2d 1287 (3d Cir.1972) (untimely Rule 59 motion entertained by court under Rule 60). Since McGonigle's post-trial contempt motion is really seeking post-trial relief from our January 14, 1994 order, we will recharacterize the motion as a Rule 60(b)(6) motion.

■ The decision to grant relief under Rule 60(b)(6) is within the sound discretion of the court. *Laskey v. Continental Products Corp.,* 804 F.2d 250, 256 (3d Cir.1986). The Third Circuit has long held that "[r]ule 60(b)(6) relief is available only in cases evidencing extraordinary circumstances." *Stradley v. Cortez, supra,* 518 F.2d at 493; *Mayberry v. Maroney,* 558 F.2d 1159, 1163 (3d Cir.1977) (relief justified only upon a showing of exceptional circumstances and where absent such relief an extreme and unexpected hardship would result).

■ In considering Rule 60 motions, our job is "to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Secretary of Health, Education and Welfare,* 572 F.2d 976, 977 (3d Cir.1978). The rationale underlying the rule is to ensure that judgments are based on the true merits of the case. *Yamaha International Corp. v. United Furniture Workers,* 1989 WL 153964, at *1–2, 1989 U.S.App. LEXIS 19431, at *4 (6th Cir. December 21, 1989). We believe that Rule 60(b)(6) is the appropriate procedural mechanism to enable McGonigle to raise the question of the outstanding debts.

■ In *Laskey v. Continental Products Corp., supra,* the Third Circuit held that the district court was compelled to grant some relief under Rule 60(b)(6) on a motion for an order allocating post-settlement proceeds in a products liability case. The court laid out a six factor test for use in considering whether to grant a Rule 60(b)(6) motion:

In exercising its discretion the district court is guided by a number of relevant factors, *inter alia,* "[1] the general desirability that a final judgment should not be lightly disturbed; [2] the procedure provided by Rule 60(b) is not a substitute for an appeal; [3] the Rule should be liberally construed for the purpose of doing substantial justice; [4] whether, although the motion is made within the maximum time, if any, provided by the Rule, the motion is made within a reasonable time ... [5] whether there are any intervening equities which make it inequitable to grant relief; [6] any other factor that is relevant to the justice of the [order] under attack ..."

*Id.,* at 256 (citations omitted). Each of these factors weigh in favor of our granting relief. To begin with, as explained in greater detail below, in granting McGonigle's Rule 60(b) motion, we will permit McGonigle to submit supplemental pleadings (and permit Bachman to file responsive pleadings) on the question of the responsibility for the payment of the Bank of Boston and Kunkel loans. Such relief will in no way disturb the finality of the jury's verdict that McGonigle breached the contract, that he owed Bachman $22,050 in damages, and that Bachman owed McGonigle $304,920 for the net proceeds due McGonigle for the value of the wholesalership (for a final verdict of $282,870 in favor of McGonigle). Rather, we are merely permitting the parties to properly resolve the question of the responsibility for the debts in question.

With regard to the second *Laskey* factor, this relief is not a substitute for an appeal. Once again, we are not altering or amending

the jury's findings or any of our previous legal rulings in this matter. With respect to the third factor, we believe this relief is necessary and in the interests of substantial justice. Responsibility for the debts is a necessary concomitant to the proper resolution of this dispute. As to the fourth factor, this motion was made within a reasonable amount of time, and in compliance with Local Rule 20(e).[5] As to the fifth *Laskey* factor, we believe the equities weigh in favor of relief and as to the sixth factor, we find no other considerations relevant to our decision.

In sum, we believe Rule 60(b)(6) relief is appropriate here. The resolution of the issue of the outstanding debts constitutes extraordinary circumstances justifying such relief. If Mr. McGonigle is correct, and Bachman is responsible for the debts, Mr. McGonigle will enjoy the full amount of the jury's verdict. If McGonigle is incorrect, he will not only lose the $282,870 verdict, but he will be forced to pay additional funds to the creditors. What's more, the burden of the pending state court litigation may be lifted with our resolution of this matter.

■ We are not prepared at this time, however, to direct Bachman to pay the disputed debts. We believe the proper course is to permit McGonigle to reopen this matter and file supplemental pleadings on the question of which party is responsible for the payment of the Bank of Boston and Kunkel debts.

Our relief under Rule 60(b) will be to permit McGonigle to file supplemental pleadings, pursuant to Fed.R.Civ.Proc. 15(d), on the question of which party is responsible for the payment of the Bank of Boston and Kunkel debts. Rule 15(d) provides in relevant part:

> Upon motion of party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences which have happened since the date of the pleading sought to be supplemented.

"The Federal Rules of Civil Procedure make liberal allowance for the supplementation of a complaint based on events occurring after the original complaint was filed." *Cohen v. Wolgin*, 1987 WL 17962 *1, 1987 U.S.Dist. LEXIS 8979, at *3 (E.D.Pa. October 5, 1987). Indeed, federal courts have permitted supplemental pleadings after having entered a judgment, *Otis Elevator Co. v. 570 Building Corp.*, 35 F.Supp. 348 (E.D.N.Y.1940), and after having issued a final order. *Poindexter v. Louisiana Financial Assistance Commission*, 296 F.Supp. 686 (E.D.La.1968), *aff'd* 393 U.S. 17, 89 S.Ct. 48, 21 L.Ed.2d 16 (1968). *See* 6A Wright and Miller, *Federal Practice and Procedure* § 1509 (1990). Thus, we believe it is within our discretion to permit further pleadings to be filed on the question of the outstanding debts. Given that the dispute over the responsibility for the debts arose well after the filing of the original pleadings, Rule 15(d) supplemental pleadings are in order.

The parties should direct these pleadings to the resolution of the question of which party is responsible for the payment of the debts. The parties are advised to present legal and factual arguments, based on the text of the contract and the explicit and implicit significance of the jury charge and jury verdict in this case, as to which party assumed responsibility for the Kunkel and Bank of Boston debts once Bachman took control of the wholesalership and tendered the fair market value, less outstanding debts and liens, to McGonigle. In other words, the parties must demonstrate the legal significance of the subtraction of the debts and liens from the monies owed by Bachman to McGonigle for the value of the wholesalership. Based on the pleadings of the parties on this question, the court will sit in equity and issue appropriate relief.

We recognize that the post-trial relief we today provide is unusual. Nonetheless, we believe a prompt resolution of these issues will result in the fair and just implementation of the jury's verdict.

### III. Conclusion

For the reasons stated, the court deems Defendant's Motion for Contempt as a Mo-

---

5. We note that transcripts of the trial were ordered in compliance with Local Civil Rule 20(e)

governing post-trial motions.

tion for Post–Trial Relief under Fed.R.Civ. Proc. 60(b)(6). The court directs defendant to file supplemental pleadings pursuant to Fed.R.Civ.Proc. 15(d) on the question of which party is responsible for the payment of the Kunkel and Bank of Boston debts, and plaintiff to file responsive pleadings in response thereto.

An appropriate order follows.

### ORDER

AND NOW, this 1st day of June, 1994, consistent with the foregoing opinion, Defendant's Motion for Contempt and for Orders in Furtherance of Judgment, filed February 18, 1994 is **DEEMED A MOTION PURSUANT TO FED.R.CIV.PROC. 60(b)(6) and is GRANTED** as follows:

1. Defendant is directed, within 21 days of this Order, to file supplemental pleadings pursuant to Fed.R.Civ.Proc. 15(d) on the question of which party is responsible for the payment of the Kunkel and Bank of Boston debts and such other issues as may be relevant; and

2. Plaintiff is directed to file responsive pleadings on this issue within 14 days after the receipt of Defendant's pleadings.