**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

v.

**THINK ACHIEVEMENT CORP.,**
**et al., Defendants.**

No. 2:98–CV–12–TS.

United States District Court,
N.D. Indiana,
Hammond Division.

Feb. 9, 2001.

Gregory A. Ashe, Fed. Trade Com'n, Washington, DC, for plaintiff.

Gregory J. Sarkisian, Sarkisian and Fleming, Portage, IN, for defendants.

## MEMORANDUM OF DECISION ON EX PARTE ORDERS

SPRINGMANN, United States Magistrate Judge.

This matter is before the Court on an Ex Parte Motion to Enforce Immediate Sanctions and Affidavit [DE 572] and an Ex Parte Petition for Writ of Execution, Writ of Assistance, and Hold Harmless Agreement [DE 573], filed by the Receiver, J. Brian Hittinger, on February 9, 2001. For the following reasons, the Court grants this Motion and Petition.

### PROCEDURAL BACKGROUND

On September 29, 2000, this Court entered a Memorandum and Order [DE 523], granting summary judgment in part and finding that William H. Tankersley and the Corporate Defendants engaged in deceptive acts or practices in violation of section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a). In its September 29, 2000 Memorandum and Order, the Court noted that all the parties consented to have this case assigned to a United States Magistrate Judge to conduct any and all proceedings in this case and order the entry of a final judgment and that this Court has authority to decide the merits of this case under 28 U.S.C. § 636(c)(1). On October 18, 2000, this Court entered another Memorandum and Order [DE 524], granting summary judgment as to the remaining portions. In this Memorandum and Order, the Court *inter alia* entered final judgment for the Plaintiff and against the Defendants (including William Tankersley and Relief Defendant Linda Tankersley), issued a permanent injunction against the Defendants, awarded consumer redress, and appointed a Permanent Receiver. The Court's October 18, 2000 Memorandum and Order states that "this Court shall retain jurisdiction of this matter for all purposes." October 18, 2000 Memorandum and Order at 27.

On January 4, 2001, the Receiver, J. Brian Hittinger, filed a Motion to Show Cause [DE 555–1] and a Motion for Certification of Facts [DE 555–2]. In these Motions, the Receiver alleged that William Tankersley and Linda Tankersley have failed to provide the Receiver with certain property and information,[1] as ordered by the Court on October 18, 2000.

On January 29, 2001, this Court held an in-court hearing on these Motions. The Plaintiff participated by Attorney Greg Ashe. Defendants William H. Tankersley and Linda Tankersley were present and participated by Attorney Gregory Sarkisian. Attorney Nick Thiros participated on behalf of William Tankersley as it pertained to his related criminal case. Attorney J. Brian Hittinger participated as the Receiver. After hearing argument and finding William H. Tankersley and Linda Tankersley in contempt of court, the Court ordered *inter alia* that the Motion to Show Cause and for Certification of Facts be

---

1. The Motion identified the following property and information: "their Social Security Numbers; title to any and all real and personal property owned by Defendant and/or Relief Defendant; and accountings of, and repatriation of, all assets held in foreign countries for the benefit of, controlled or owned by Defendant and/or Relief Defendant." Mot. to Show Cause and for Certification of Facts at 1.

granted, that the Tankersleys would have ten days, up to and including February 8, 2001, in which to come into full compliance with all other outstanding issues as presented in the Receiver's Motion and in conjunction with the Court's Order of October 18, 2000, or face immediate sanctions. See Minute Entry for In–Court Hearing [DE 567].

### MATERIAL FACT

As of February 9, 2001, William H. Tankersley and Linda Tankersley have failed to come into full compliance with the Court's Order.

### ANALYSIS

 This Court may punish, as contempt of court, failure to comply with its injunctive order. *Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *S.E.C. v. Simpson,* 885 F.2d 390 (7th Cir.1989). A court order must be obeyed unless, and until, it is reversed by orderly and proper proceedings. *United States v. Mine Workers,* 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884 (1947). Furthermore, violations of an underlying injunctive order are punishable as contempt even if the injunctive order is later set aside on appeal. *Pabst Brewing Co. v. Brewery Workers Local Union No. 77, AFL—CIO,* 555 F.2d 146 (7th Cir.1977).

The Federal Courts Improvement Act of 2000, signed into law on November 13, 2000, amended 28 U.S.C. § 636(e). The Act now provides in relevant part:

(1) In General.—A United States magistrate judge serving under this chapter shall have within the territorial jurisdiction prescribed by the appointment of such magistrate judge the power to exercise contempt authority as set forth in this subsection.

. . . . .

(4) Civil Contempt Authority in Civil Consent and Misdemeanor Cases.—In any case in which a United States magistrate judge presides with the consent of the parties under subsection (c) of this section, and in any misdemeanor case proceeding before a magistrate judge under section 3401 of title 18, the magistrate judge may exercise the civil contempt authority of the district court. This paragraph shall not be construed to limit the authority of a magistrate judge to order sanctions under any other statute, the Federal Rules of Civil Procedure, or the Federal Rules of Criminal Procedure.

. . . . .

(7) Appeals of Magistrate Judge Contempt Orders.—The appeal of an order of contempt under this subsection shall be made to the court of appeals in cases proceeding under subsection (c) of this section. The appeal of any other order of contempt issued under this section shall be made to the district court.

Federal Courts Improvement Act of 2000, Pub.L. No. 106–518, § 202, 114 Stat. 2410 (2000) (amending 28 U.S.C. § 636).

As to the civil contempt power of federal courts, federal statutory law provides:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401.

 A contempt order may be either civil or criminal, and the lines of demarcation between the two are well established. *See Int'l Union, United Mine Workers of*

*Am. v. Bagwell*, 512 U.S. 821, 826–27 n. 3, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Hicks v. Feiock*, 485 U.S. 624, 632, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); *Shillitani v. United States*, 384 U.S. 364, 368, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 444, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Essentially, contempt is considered civil if the sanction imposed is designed primarily to coerce the contemnor into complying with the court's demands and criminal if its purpose is to punish the contemnor, vindicate the court's authority, or deter future misconduct. *See Hicks*, 485 U.S. at 631–32, 108 S.Ct. 1423; *SEC v. Simpson*, 885 F.2d 390, 395 (7th Cir.1989). Because most sanctions contain both coercive and punitive elements, the categorization focuses on "an examination of the character of the relief itself." *Bagwell*, 512 U.S. at 828, 114 S.Ct. 2552 (quoting *Gompers*, 221 U.S. at 442, 31 S.Ct. 492). When the contempt order involves imprisonment, if "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket'" *id.*, it remains coercive and therefore civil. Thus, "[t]he paradigmatic, coercive, civil contempt sanction ... involves confining a contemnor indefinitely until he complies with an affirmative command such as an order 'to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance.'" *Bagwell*, 512 U.S. at 828, 114 S.Ct. 2552 (quoting *Gompers*, 221 U.S. at 442, 31 S.Ct. 492). On the other hand, prison terms of a definite, pre-determined length, which do not provide the contemnor an opportunity to purge, are generally considered punitive and therefore criminal. *Hicks*, 485 U.S. at 632, 108 S.Ct. 1423.

 Civil contempt proceedings may be classified into two categories. Coercive sanctions, which are really the essence of civil contempt, seek to induce future behavior by attempting to coerce a recalcitrant party to comply with an express directive from the court. *See Latrobe Steel Co. v. United Steelworkers of Am., AFL—CIO*, 545 F.2d 1336, 1344 (3rd Cir. 1976). Remedial sanctions, by contrast, are backward-looking and seek to compensate an aggrieved party for losses sustained as a result of the contemnor's disobedience of a court's order or decree made for the aggrieved party's benefit. *See id.* However, irrespective of the nature of the civil contempt proceeding (whether coercive or remedial), any sanction imposed by the court must be predicated on a violation of an explicit court order. *See Ferrell*, 785 F.2d at 1378; *Boylan v. Detrio*, 187 F.2d 375, 378–79 (5th Cir.1951). The purposes of a civil contempt order are to "coerce compliance with the underlying order and/or to compensate the complainant for loss sustained by disobedience." *Blocksom & Co. v. Marshall*, 582 F.2d 1122, 1124 (7th Cir. 1978). Thus, civil contempt proceedings are coercive and remedial, but not punitive in nature, and sanctions for civil contempt are designed to compel the contemnor into compliance with an existing court order or to compensate the complainant for losses sustained as a result of the contumacy. *See Bagwell*, 512 U.S. at 826–28, 114 S.Ct. 2552; *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir.1988).

 Civil contempt proceedings are part of the action from which they stem, and their purpose is to secure compliance with a prior court order. *D. Patrick, Inc. v. Ford Motor Co.*, 8 F.3d 455, 459 (7th Cir.1993). A court's civil contempt power rests in its inherent limited authority to enforce compliance with court orders and ensure judicial proceedings are conducted in an orderly manner. *See, e.g., id.; Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986). A district court has considera-

ble latitude in how it goes about enforcing its own decrees in a contempt proceeding; thus, a district court's decision on a contempt petition is discretionary in character and is not to be reversed except for abuse of such discretion or unless clearly erroneous. *D. Patrick, Inc.*, 8 F.3d at 459; *Stotler & Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.1989); *Ferrell*, 785 F.2d at 1378; *Walaschek & Assocs. v. Crow*, 733 F.2d 51, 53 (7th Cir.1984); *American Fletcher Mortgage Co. v. Bass*, 688 F.2d 513, 517 n. 5 (7th Cir.1982) ("In reviewing the district court's findings we are bound by the 'clearly erroneous' standard....").

■■■ To hold a party in contempt, the court "must be able to point to a decree from the court which 'set[s] forth in specific detail an unequivocal command' which the party in contempt violated." *Stotler*, 870 F.2d at 1163 (citations omitted); *Ferrell v. Pierce*, 785 F.2d 1372, 1378 (7th Cir.1986) (quoting *H.K. Porter Co. v. Nat'l Friction Prods.*, 568 F.2d 24, 27 (7th Cir.1977)). A determination of contempt requires an order of "reasonable specificity which has been violated." *Matter of Betts*, 927 F.2d 983, 986 (7th Cir.1991). A complaining party bears the initial burden of proving by "clear and convincing" evidence that the order was knowingly violated. *See, e.g., Commodity Futures Trading Comm'n v. Wellington Precious Metals, Inc.*, 950 F.2d 1525, 1529 (11th Cir.1992); *Stotler*, 870 F.2d at 1163; *Hayden v. Oak Terrace Apartments*, 808 F.2d 1269, 1270 (7th Cir.1987); *United States v. Huebner*, 752 F.2d 1235, 1241 (7th Cir.), *cert. denied*, 474 U.S. 817, 106 S.Ct. 62, 88 L.Ed.2d 50 (1985). A court ordinarily does not have to find that the violation was "willful" to find a party in contempt, *see Commodity Futures Trading Comm'n v. Premex, Inc.*, 655 F.2d 779, 784 n. 9 (7th Cir.1981), and it may find a party in civil contempt if he has not been "reasonably diligent and energetic in attempting to accomplish what was ordered," *Bass*, 688 F.2d at 517 (citation

omitted). *See also Stotler*, 870 F.2d at 1163. After the complainant makes the prima facie showing, the burden of production shifts to the alleged contemnor, who may defend his violation by establishing inability to comply. *United States v. Rylander*, 460 U.S. 752, 757, 103 S.Ct. 1548, 75 L.Ed.2d 521 (1983). This burden can only be surmounted by "com[ing] forward with evidence in support of it." *Id.* at 761, 103 S.Ct. 1548.

■■■ William and Linda Tankersley have had over three months to comply with the Court's Order of October 18, 2000. Appearing in person and with counsel at the hearing on January 29, 2001, William and Linda Tankersley had an opportunity to be heard and to establish any inability to comply with the Court's Order. The Tankersleys objected to providing information to the Receiver only as to a claimed Fifth Amendment privilege regarding some of the information because of an ongoing grand jury investigation. The Court directed the parties to submit an Agreed Protective Order with regard to the information. On February 5, 2001, the Court entered a Stipulated Protective Order [DE 570], which was signed by Gregory Sarkisian, Attorney for William and Linda Tankersley, Gregory A. Ashe, Attorney for the FTC, and J. Brian Hittinger, Permanent Receiver. Notwithstanding the entry of the Protective Order, the Tankersleys failed to provide the Receiver with the information and property ordered by the Court.

Given these circumstances, the Court finds that the Receiver has established by clear and convincing evidence that William and Linda Tankersley have knowingly violated this Court's Orders of October 18, 2000, and January 29, 2001. The Tankersleys have not satisfied their burden of coming forward with evidence demonstrating their inability to comply with the

Court's Orders. The Court therefore finds that William and Linda Tankersley continue to be in contempt of Court.

At the January 29, 2001 hearing, William and Linda Tankersley did not raise any specific objection to imprisonment as a possible sanction and did not propose an alternative sanction. The Court notes that their assets have been frozen and are being marshaled by the Receiver and that the Court's early attempts to bring the Tankersley into compliance have been ineffective and have been met with resistance. For these reasons, the Court finds that a fine is an inadequate means of enforcing the Court's Order and that William and Linda Tankersley must be imprisoned until such time as they purge themselves of such contempt.

## CONCLUSION

For these reasons, the Court GRANTS the Receiver's Ex Parte Motion to Enforce Immediate Sanctions [DE 572] and Ex Parte Petition for Writ of Execution, Writ of Assistance, and Hold Harmless Agreement [DE 573]. The Court has found William and Linda Tankersley in contempt of Court and ORDERS that warrants be issued for the arrest of William and Linda Tankersley and that they be imprisoned until they purge themselves of such contempt.