Laurie CONNOLLY d/b/a Brindar Designs, Plaintiff–Appellee,

v.

J.T. VENTURES and John Lange, Defendants–Appellants.

No. 87–2329.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 26, 1988.

Decided July 8, 1988.

Christopher Cronson, Oak Park, Ill., for defendants-appellants.

Lawrence M. Jarvis, Allegretti, Hewitt, Witcoff & McAndrews, Chicago, Ill., for plaintiff-appellee.

Before BAUER, Chief Judge,
POSNER, Circuit Judge, and PELL,
Senior Circuit Judge.

PELL, Senior Circuit Judge.

The district court found defendants-appellants J.T. Ventures, Ltd. and John Lange, its president, to be in contempt for violating the terms of a settlement agreement entered into just under a year earlier. A judgment of approximately $16,000 was entered against the corporation, Lange, and Thomas Brandt, the corporation's vice-president. Lange and Brandt were held jointly and severally liable with the corpo-

ration. Roughly one-half of the judgment represented a compensatory award to the plaintiff, while the other half represented an award of attorneys' fees. The defendants appeal, challenging the damages award, the imposition of personal liability on the officers, and the award of attorneys' fees. The finding of willful contempt is not challenged on appeal.

*Background*

Plaintiff-appellee Laurie Connolly, doing business as Brindar Designs, markets sweatshirts. The shirts' copyrighted design bears the names of the cities London, Paris, and Rome as well as the name of a fourth city, for example, Seattle. The design also includes an illustration of a familiar landmark associated with each city, Big Ben, the Eiffel Tower, and the Colosseum in the case of London, Paris, and Rome, the Space Needle in the case of Seattle. The shirts are primarily sold in and around the fourth city.

The shirt design is copyrighted and when J.T. Ventures [1] began selling a shirt with a similar design, Connolly sued for copyright infringement. The case was settled by an agreement under which J.T. Ventures agreed to pay Connolly $2,000 and to make certain specified changes in its design (*e.g.*, changing the typeface; using different landmarks for London, Paris, and Rome; changing the order of those cities). The court entered a final order which incorporated the terms of the settlement agreement. The copyright infringement suit was dismissed with prejudice; the court retained jurisdiction for purposes of enforcing the order. Although J.T. Ventures made some changes to the design of its shirt, as the district court found, and defendants do not contest on appeal, the redesigned shirt did not comply with the terms of the settlement agreement. It continued to list London as the first city and used a typeface which was not sufficiently different from that used by Connolly. The district court also found that the contempt had been willful.

---

1. The corporation's vice-president, Thomas Brandt, was not a named defendant. We use the term "J.T. Ventures" to refer collectively to J.T. Ventures, John Lange, and Thomas Brandt.

*Damages Award*

The district court held a hearing on damages and ultimately awarded Connolly slightly more than $7,500 in compensatory damages. The figure represented the profit obtained by the defendants from the sale of their shirts. The parties agreed that this was the correct amount of profits. In determining that defendants' profits were an appropriate measure of damages, the district court held that it was proper to look at analogous areas of law. Since the underlying lawsuit was one for copyright infringement, the district court looked to the provisions of copyright law. Section 504(b) of the Copyright Act provides that an infringer's profits from the unauthorized use of a copyrighted work may be recovered by the copyright owner. 17 U.S.C. § 504(b). Thus Judge Getzendanner determined that J.T. Ventures' profits would be an appropriate measure of damages in a civil contempt action where the underlying lawsuit sounded in copyright, relying in part on her earlier unpublished decision in *Motorola, Inc. v. Computer Displays International, Inc.*, No. 82 C 1399, slip op. (N.D.Ill. September 17, 1985) [available on WESTLAW, 1985 WL 2864]. The thrust of defendants' appeal on this issue attacks the district court's analysis—in large part because, due to the fact that the parties settled the copyright infringement suit, J.T. Ventures neither admitted infringing nor was found to have infringed Connolly's copyright. We need not decide the issue as framed by J.T. Ventures, however, because we find that the district court judge fashioned an appropriate equitable remedy in the equitable contempt proceeding.

Much of J.T. Ventures' brief on appeal argues that Connolly failed to prove that she had lost any sales. Connolly's hearing testimony established that her damages arose in part due to the manner in which she markets her shirts. Rather than sell them through numerous retailers she generally grants one store the exclusive rights to sell her shirts—she testified that this exclusivity was an important aspect of her marketing plan. Sales of J.T. Ventures' shirts in the same city destroyed that exclusivity. Sales of J.T. Ventures' shirts in cities where Connolly did not yet but planned to sell her shirts also detracted from her ability to offer an exclusive to retailers.

J.T. Ventures first points to the fact that Connolly admitted that her sales had only gone up during the pendency of the litigation. This does not show that Connolly lost no sales. Her sales might have been even higher were it not for the sales of J.T. Ventures' shirts. In reply, J.T. Ventures characterizes the award of its profits as a "windfall" to Connolly, in part because it has continued to sell its once-again redesigned shirt, therefore it did not obtain profits which would have otherwise gone to Connolly. We disagree. Essentially, this argument boils down to the contention that because J.T. Ventures would still have made a profit by complying with the terms of the settlement agreement, it should not be deprived of the profits made by violating the agreement.

The evidence of sales *actually* lost was not the best. But even if we thought that the court had made a finding that Connolly had been actually damaged by lost sales, which it did not, and that such a finding was clearly erroneous, which we do not, we would affirm. The district court found that Connolly was entitled to compensation in the form of defendants' profits from the sale of its shirts and we agree. Therefore we focus on J.T. Ventures' argument challenging the use of its profits as a measure of damages. In support of this argument, J.T. Ventures claims a lack of authority explicitly supporting such an award, although it conceded at oral argument that it knew of no authority prohibiting such an award.

Sanctions for civil contempt may be imposed to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy, *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 701–02, 91 L.Ed. 884 (1947); where compensation is intended, a fine may be imposed payable to the complainant, *id.* at 304, 67 S.Ct. at 701. J.T. Ventures argues

that any fine must be based only upon actual losses sustained as a result of the contumacy.

■ A court has broad discretion to fashion a remedy based on the nature of the harm and the probable effect of alternative sanctions. *United Mine Workers*, 330 U.S. at 303–04, 67 S.Ct. at 701–02. "A civil fine is paid to the opposing party and may serve as recompense for losses sustained because of the contempt." Dan B. Dobbs, *Handbook on the Law of Remedies*, § 2.9 at 99 (West 1973).

■ An early Seventh Circuit case reversed a $500 fine for civil contempt where the record showed no evidence of loss or damage from disobedience of the injunction. *Norstrom v. Wahl*, 41 F.2d 910, 914 (7th Cir.1930). Subsequently, in *Leman v. Krentler–Arnold Hinge Last Co.*, 284 U.S. 448, 52 S.Ct. 238, 76 L.Ed. 289 (1932), the Supreme Court reversed a decision holding that a defendant's profits were not recoverable in a civil contempt proceeding in the absence of proof of pecuniary injury or damage. There the respondent had violated a permanent injunction which had been granted in a patent infringement suit. The court held that the compensatory goal of a civil contempt proceeding "does not require so narrow a view of what should be embraced in an adequate remedial award." *Id.* at 456, 52 S.Ct. at 241. We find the court's reasoning equally apt in this case:

> While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of compensatory relief. In a suit in equity against an infringer, profits are recoverable not by way of punishment but to insure full compensation to the party injured.... The court of equity in such cases applies familiar [sic] principle in 'converting the infringer into a trustee for the patentee as regards the profits thus made.' [Citation.] This is not to say that there is an actual fiduciary rela-

tion which would give the right to an accounting for profits regardless of the existence of a basic claim to equitable relief. [Citation.] ... [A] court of equity which has acquired, upon some equitable ground, jurisdiction of a suit for the infringement of a patent, will not send the plaintiff to a court of law to recover damages, but will itself administer full relief, by awarding, as an equivalent or a substitute for legal damages, a compensation computed and measured by the same rule that courts of equity apply to the case of a trustee who has wrongfully used the trust property for his own advantage. 'Profits are thus allowed as an equitable measure of compensation.' [Citation.] In view of the principles governing the broader relief obtainable in equity, as contrasted with those applicable in courts of law, it is apparent that there is no necessary exclusion of profits from the idea of compensation in a remedial proceeding.

> .... [T]here is no reason why in such a proceeding equitable principles should not control the measure of relief to be accorded to the injured party.

*Leman*, 284 U.S. at 456–57, 52 S.Ct. at 241–42. *But see National Drying Machinery Co. v. Ackoff*, 245 F.2d 192, 194 (3d Cir.) (*en banc*) (The "*Leman* case does not relieve the complainant of showing that the contemptuous conduct did, in fact, have substantial injurious effect upon his economic interest."), *cert. denied*, 355 U.S. 832, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957).[2] *See also* Dobbs, *Handbook on the Law of Remedies* § 2.9 at 100, n. 31 ("Although a fine based upon the defendant's gains is not compensatory, it operates to prevent unjust enrichment and would seem appropriate whenever the same general sort of act would permit an unjust enrichment claim in law or equity.").

*Leman*, unlike this case, involved a finding of infringement. However, in *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467 (2d Cir.1958), the Second

---

**2.** Writing separately for the Second Circuit in *Sunbeam Corp. v. Golden Rule Appliance Co.*, 252 F.2d 467 (2d Cir.1958), Judge Learned Hand noted that he found it "impossible to reconcile

[the Third Circuit's *en banc* holding in *National Drying Machinery*] with the language used in *Leman*." 252 F.2d at 471 (Hand, J., concurring).

Circuit considered *Leman* in an appeal from a judgment of civil contempt for the violation of a consent decree in a case brought under New York's fair trade laws. There the defendant's violation of the consent decree had caused injury only to the plaintiff's good will. The district court awarded the plaintiff a fine of $1,000 for the past violations. The Second Circuit reversed the fine. Three separate opinions were filed. Judge Hincks concluded that the plaintiff could recover the defendant's profits, rejecting the notion that such an award was punitive rather than compensatory, reasoning that "its effect goes no further than to give to the plaintiff the profits derived by the defendant's wrongful conduct: it does not take from the defendant assets not related to its wrongful conduct. . . . such a recovery rests 'upon the equitable principle of unjust enrichment' which is the antithesis of punishment." *Sunbeam,* 252 F.2d at 470 (Hincks, J., writing for the majority) (citing Restatement, Restitution § 1). In his concurrence, Judge Learned Hand relied solely on *Leman* in concluding that the defendant's profits were an appropriate measure of damages. *Id.* at 471 (Hand, J., concurring). Similarly, Judge Lumbard cited *Leman* in agreeing that "the authorities seem to support the view that it is enough to show the profits which the contemnor made and to award such amount." *Id.* at 472 (Lumbard, J., concurring in part and dissenting in part). *See also John B. Stetson Co. v. Stephen L. Stetson Co.,* 133 F.2d 129, 130 (2d Cir.1943) ("no error in requiring the defendant to account for profits in a civil contempt proceeding. [Citation.] . . . [The word 'damages'] does not exclude damages in the form of profits."); Dan B. Dobbs, *Contempt of Court: A Survey,* 56 Cornell L.Rev. 183, 276–78 (1971).

J.T. Ventures' reliance on *United States v. United Mine Workers,* is therefore misplaced. *United Mine Workers* contains some language helpful to defendants: "Where compensation [to the complainant for losses sustained] is intended, a fine is imposed, payable to the complainant. Such fine must of course be based upon evidence of complainant's actual loss, . . ." 330 U.S.

at 303–04, 67 S.Ct. at 701–02. *See also Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 444, 31 S.Ct. 492, 499, 55 L.Ed. 797 (1911). We are persuaded that *United Mine Workers* does not affect the *Leman* holding for the reasons stated by Chief Judge Biggs, dissenting from the denial of rehearing *en banc,* in *National Drying Machinery Co.:*

[T]he Leman decision was not overruled by *United States v. United Mine Workers,* 1947, 330 U.S. 258, 67 S.Ct. 677, 91 L.Ed. 884. That the Supreme Court was not focusing its attention on the issue of proof of profits as distinguished from the issue of proof of damages in the United Mine Workers case is demonstrated by the fact that the opinion in that case cites with approval . . . both the Leman case and *Norstrom v. Wahl,* 7 Cir., 1930, 41 F.2d 910, 914. Leman and Norstrom are directly contrary in their respective rulings in relation to the issue of proof of profits in contradistinction to the issue of proof of damages.

[T]he statement in the United Mine Workers opinion that where a fine is imposed as one kind of judicial sanction in a civil contempt proceedings, [sic] 'Such fine must * * * be based upon evidence of complainant's actual loss * * *' [citation] was not dispositive of the civil contempt issue raised in *United Mine Workers* case for the fine imposed had as its objective coercion of compliance with the order of the court and not compensation to an injured private party. [Citation.]

245 F.2d at 195–96 (Biggs, C.J., dissenting from denial of petition for rehearing *en banc*).

Consequently, we conclude that an award of defendants' profits was a proper measure of damages to compensate the plaintiff in this civil contempt proceeding.

*Personal Liability*

█ The court held that both John Lange and Thomas Brandt, as officers of the corporation charged with insuring its compliance with the settlement agreement, were therefore in contempt, making them jointly and severally liable for the judg-

ment. On appeal, defendants argue that there can be no personal liability in the absence of facts which would support the "piercing of the corporate veil," relying heavily on the First Circuit's opinions in *G. & C. Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29 (1st Cir.1980) and *Parker v. United States*, 126 F.2d 370 (1st Cir. 1942). While these cases are illuminative, they are not dispositive.

*Parker* held that where corporate officers

> merely fail to take action within their power to cause the corporation to comply with the decree, the officers are in civil contempt, but the obligations under the decree do not thereby become the personal obligations of the delinquent officers.

*Parker*, 126 F.2d at 379. The court in *Parker* went on to hold Parker personally liable "to the extent that Parker's contumacious acts had the intended effect of causing loss...." *Id.* Parker had engaged in "a studied course of conduct over a long period of time ... deliberately render[ing] his company] incapable of complying with the decrees." *Id.*

*G. & C. Merriam*, noting the absence of case law accepting or rejecting the concept, analogized the imposition of personal liability in that case to piercing the corporate veil. *G. & C. Merriam* does not *require* that the corporate veil be capable of being pierced prior to imposing personal liability on the corporate officers responsible for insuring the corporation's compliance with a court order. There, the district court had held George Hoskins, the principal of several publishing concerns, in contempt of an earlier injunction. Hoskins, however, had neither been named in the injunction nor had been a party to the first proceeding. He had been a "key employee" of a defunct corporation that had been a party. The Court of Appeals found that the inquiry into whether Hoskins was *legally identified* with the enjoined corporation was analogous to piercing the corporate veil of the enjoined corporation. The court held that Hoskins had to be legally identified with the enjoined corporation in order to have been bound by the injunction and

therefore liable for contempt. There is no question, in this case, of whether John Lange or Thomas Brandt were bound by the terms of the court's order entering the settlement agreement. Both men were.

It is well-settled that

> [a] command to the corporation is in effect a command to those who are officially responsible for the conduct of its affairs. If they, apprised of the writ directed to the corporation, prevent compliance or fail to take appropriate action within their power for the performance of the corporate duty, they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt.

*Wilson v. United States*, 221 U.S. 361, 376–77, 31 S.Ct. 538, 542–43, 55 L.Ed. 771 (1911); *accord United States v. Seetapun*, 750 F.2d 601, 607 (7th Cir.1984). The district court committed no error in holding Lange and Brandt jointly and severally liable with the corporation.

*Attorneys' Fees*

The district court awarded Connolly over $8,500 in attorneys' fees, first awarding about $4,800 after finding that she had clearly demonstrated her entitlement to the fees. The court later awarded another $3,700, after reducing that request by 10 hours. J.T. Ventures predicates its first attack on the award of fees on the success of its arguments that the recovery sought by Connolly was unavailable under existing case law. Our holding on the damages issue forecloses such an attack.

██ Next, J.T. Ventures argues that the court failed to consider the appropriate factors in determining the amount of the fee award, apparently because the court did not specifically state what factors were considered in making the award. It should be obvious that a failure to state the factors considered and failure to consider the proper factors are two very different things. There is simply no evidence of record that the district judge failed to consider the correct factors. What evidence there is suggests that she did. The court based the award on counsel's itemized ac-

count which described the services rendered and indicated the amount of time and billing rate of the attorneys and paralegal, and the affidavit and testimony of Connolly's lawyer, Dale Malone. As the court stated, "I'm very familiar with the kinds of charges that have been made in this case, and I have watched the case, I have watched it unfold. You have been before me most of the time. So I have a pretty good idea that this work was performed." The court considered the time required and the complexity of the case. Moreover, in reducing the later fee request, the court noted that both the cumulative amount of time spent was reasonable and that the hourly rate charged was low, offsetting some overpreparation for court hearings. The court nonetheless reduced the award, finding some work to have been duplicative.

█ In connection with the previous argument, J.T. Ventures also claims, in a perfunctory fashion, that the judge unduly restricted cross-examination of Malone on the fees issue. Specifically, J.T. Ventures contends it was not allowed to ask Malone what work he personally performed on the case, what part of the fees related to investigating Connolly's actual losses, and how the hourly rate broke down among the various phases of the case.

The court did sustain Connolly's objections to the relevancy of some of the questions asked Malone, stating, "Well, I think we are getting far afield. The witness testified as to the amount of their billings, the hourly charges, and description of the work performed. I'm satisfied that the examination ought to be limited to that." The following colloquy ensued:

MR. CRONSON: Okay. Judge, all I'm trying to do is establish the reasonableness of the actions that were taken, the time that was spent, and the dollar amounts that are being charged. So I—

THE COURT: Well, I just think it's too broad an inquiry. We just don't interrogate lawyers as to whether they could have pursued a different course of action.

MR. CRONSON: Judge, I'm not questioning that they are saying it was performed in the least. I am not trying to question that in the least. I'm just saying that I think that there was certainly other alternatives that were open here, Judge.

THE COURT: That they could have telephoned and tried to renegotiate, or something like that?

MR. CRONSON: Well, Judge, they would have at least contacted us about this, yes.

THE COURT: Well, I assume they had seen your sweatshirts. I don't think a lawyer is required to make a telephone call before bringing a contempt motion. I don't think that's required. So this line of questioning is irrelevant.

MR. CRONSON: Okay, Judge. I'll get out of that line of questioning.

The court also sustained objections to the relevancy of questions inquiring about the percentage of work devoted to proving actual damages and asking for a breakdown of the hours expended by each phase of the contempt proceeding. On appeal J.T. Ventures makes no effort to establish the relevance of these factors, claiming instead that "it cannot be discerned on what basis it was determined that the fees awarded were reasonable." We disagree. It is obvious that the judge used counsel's affidavit and testimony concerning the accuracy of its itemized bill as the basis for its award, relying on her familiarity with the proceedings. We fail to see, and J.T. Ventures has failed to point out to this court or the district court, how any of the excluded testimony was relevant.[3] We therefore find it unnecessary to adopt guidelines for assessing attorneys' fees as J.T. Ventures urges us to do.

*Conclusion*

The district court properly fashioned an equitable remedy in the contempt proceed-

---

3. Although we can imagine circumstances in which the tasks personally performed by an attorney might be relevant to the reasonableness of the fee award, J.T. Ventures makes no argument that any of the excluded testimony was relevant for *any* reason.

ing. Personal liability for the contempt award was properly imposed on Lange and Brandt. There was no error in determining and awarding attorneys' fees.[4] The judgment of the district court is

AFFIRMED.

4. Connolly has requested sanctions under Rule 38 of the Federal Rules of Appellate Procedure, claiming that this appeal is meritless. We recently took note of the troubling frequency with which lawyers in this court include such re-

quests. *Meeks v. Jewel Companies,* 845 F.2d 1421 (7th Cir.1988). We do not find the bringing of this appeal warrants an award under Rule 38. We note that neither party cited *Leman v. Krentler–Arnold Hinge Last Co.*