SOUTH SUBURBAN HOUSING CEN-
TER, an Illinois Not–For–Profit Cor-
poration, Plaintiff–Appellant,

v.

Anne BERRY, Defendant–Appellee.

No. 98–1764.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 11, 1998.

Decided Aug. 2, 1999.

Jeffrey Taren (argued), Kinoy, Taren, Geraghty & Potter, Chicago, IL, for Plaintiff-Appellant.

David A. Novoselsky (argued), Novoselsky & Associates, Chicago, IL, for Defendant-Appellee.

Before BAUER, MANION and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

South Suburban Housing Center alleged that Anne Berry, a real estate agent, engaged in racial steering. The parties settled the case with a consent decree, which Berry promptly violated. The district court declined to enforce the decree in the manner requested by the Housing Center, and the Housing Center appealed. We affirm in part, vacate in part, and remand with directions.

## I.

South Suburban Housing Center sued Anne Berry, a realtor, alleging that she steered Caucasian customers away from University Park, and steered African-American customers towards University Park and away from communities that were primarily Caucasian. Berry agreed to settle the case, and on August 11, 1994, she signed a consent decree, which was subsequently entered by the district court on August 23, 1994. Berry did not admit liability in the consent decree, but agreed to refrain from racial steering, and to document her contacts with prospective home buyers. She also agreed to pay the Housing Center damages in the amount of 10% of her commissions in excess of $25,000 per year for five years, and to deliver an accounting of her earnings to the Housing Center on a quarterly basis during that time. The decree specified possible penalties for its violation:

> In the event that Berry is convicted of violating any of the terms of this Decree or is found guilty of violating any federal, state or local Fair Housing Ordinance, (other than any violation of a purely technical or minor nature) including any nonsolicitation ordinances, then Berry shall voluntarily surrender her real estate sales license and will refrain from engaging in real estate sales for a period of five years thereafter.

*See* Consent Decree, Appendix of Plaintiff–Appellant South Suburban Housing Center, at ¶19. Despite signing the consent decree, Berry failed to comply with any of her reporting or payment obligations. For more than a year, the Housing Center attempted to obtain voluntary compliance with the decree. After incurring considerable expense in these efforts, the Housing Center filed a civil contempt proceeding to enforce the decree and to obtain damages for the violations. In particular, the Housing Center sought monetary damages, attorneys' fees and the surrender of Berry's real estate license.

The district court found by clear and convincing evidence that Berry had wilfully violated the consent decree, and ordered that she immediately comply with each and every provision. The court entered judgment in the amount of $4,280.40, plus prejudgment interest. That amount was determined by calculating 10% of Berry's commissions above $25,000 for the years that she had failed to pay pursuant to the terms of the consent decree. Because the Housing Center was also seeking reimbursement for its staff time expended in seeking voluntary compliance as well as attorneys' fees for the contempt proceeding, the district court allowed Berry an opportunity to submit evidence in mitigation to possible additional sanctions. Berry paid the $4280.40 judgment, albeit late, but pleaded poverty in response to the Housing Center's request that she be assessed damages for staff time and attorneys' fees. She also objected to the voluntary surrender of her real estate license, arguing that the loss of her livelihood was an unenforceable penalty. Finally, she argued that surrender of the license was an inappropriate penalty for a technical violation of the decree, and that she had not violated the substance of the decree that she not engage in racial steering.

The district court agreed, characterizing surrender of the real estate license as "draconian." *See* Transcript of Proceedings Before the Honorable Milton I. Shadur, December 5, 1997, at 6. The court stated that if the Housing Center had evidence of violations of the "purpose of the Decree," the court would hold a hearing to consider license revocation. The court indicated that surrender of the license was appropriate only if Berry was continuing to engage in racial steering, and not if she committed a mere technical violation of the Decree such as failure to make payments or failure to meet the reporting requirement. *See* December 5, 1997 Tr. at 8–9.

In response to the Housing Center's request for compensatory damages for the amount of staff time expended seeking voluntary compliance, as well as attorneys' fees, the court directed Berry to submit a financial statement and tax returns. The court stated that, in part, the Housing Center's ability to obtain these damages was dependent on Berry's financial condition. *See* December 5, 1997 Tr. at 12. The court characterized the Decree as equitable, and declined to "impoverish" Berry even if the Decree required that damages be awarded. *Id.*, at 13. A few months later, the parties were back before the district court because Berry had failed to provide the financial statement, and had provided only partial tax returns. The Housing Center once again sought surrender of Berry's real estate license, and requested a signed financial statement. The district court characterized the Housing Center's request for license surrender as "vengeance" and "vindictiveness." Transcript of Proceedings Before the Honorable Milton I. Shadur, February 27, 1998, at 6–7.

The court acknowledged that Berry had not provided an adequate financial statement showing her inability to pay additional damages, but declined to impose damages. Instead, the court found that the Consent Decree was a contract, and that the contract did not specifically provide for attorneys' fees, and did not provide for license surrender for any violation other than continued racial steering. Moreover, the district court noted, to the extent that

the Consent Decree did require forfeiture of the license for a failure to pay or a failure to comply with reporting requirements, that provision would be an unenforceable penalty. *Id.*, at 11–13. The court therefore denied the request for license forfeiture and also denied the request for attorneys' fees, but made its fee ruling contingent on Berry providing a personally verified financial statement immediately. The court clarified that "if the financial circumstances of the defendant here were other than what has been disclosed, I would very cheerfully, I can assure you, compel not only the payment of the amounts that she's obligated to pay and the carrying out of her reporting obligations that she is obligated to carry out, but also to create a situation in which it has not cost the South Suburban Housing Center something in order to do that." *Id.*, at 16. No one disputes that to this day, Berry has not provided a personally verified financial statement as required by the district court. The Housing Center appeals.

## II.

On appeal, the Housing Center asks us to find that the district court erred as a matter of law in denying compensatory damages for staff time solely on the basis of Berry's claimed inability to pay. The Housing Center contends that the district court abused its discretion in denying attorneys' fees to a prevailing party in these circumstances, again based totally on the defendant's claimed, but unsupported, inability to pay. Finally, the Housing Center urges us to find that the district court erred as a matter of law in holding that the license forfeiture provision of the consent decree was an unenforceable penalty.

### A.

■ The parties agree that a court may impose sanctions for civil contempt in order to coerce compliance or to compensate the complainant for losses sustained as a result of the contumacious conduct. *See*

*United States v. United Mine Workers of America*, 330 U.S. 258, 303–04, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *Connolly v. J.T Ventures*, 851 F.2d 930, 932 (7th Cir.1988). They also agree that a district court has broad discretion to fashion such an award, and may compensate the winning party for actual expenditures of staff time incurred in the successful prosecution of a contempt action. *See Connolly*, 851 F.2d at 933; *Commodity Futures Trading Commission v. Premex, Inc.*, 655 F.2d 779, 785 (7th Cir.1981). They part company, however, on the appropriate weight to be given the defendant's inability to pay. The Housing Center contends that, although financial hardship is an appropriate factor to consider when assessing a coercive civil fine, it can never be an absolute bar to compensatory damages resulting from the defendant's contumacious conduct. Berry maintains that the district court appropriately exercised its discretion by considering both the nature of the harm to the plaintiff and the probable effect of the sanctions on the defendant.

■ We cannot say that the district court erred as a matter of law because it considered the defendant's financial circumstances. *See United Mine Workers*, 330 U.S. at 303–04, 67 S.Ct. 677. When the purpose of sanctions in a civil contempt proceeding is compensatory, a fine, payable to the complainant, must be based on evidence of actual loss. *Id.* When the purpose is to make the defendant comply, the court must consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired." *Id.*, 330 U.S. at 304, 67 S.Ct. 677. "It is a corollary of the above principles that a court which has returned a conviction for contempt must, in fixing the amount of a fine to be imposed as a punishment or as a means of securing future compliance, consider the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defen-

dant." *Id.* Thus, it was appropriate for the court to consider Berry's financial circumstances in deciding whether to award attorneys' fees or compensatory damages for staff time expended in seeking compliance.[1]

However, we must conclude that the district court abused its discretion in making that factor determinative when there was an inadequate factual basis in the record to support it. Nowhere in the record do we find the personally verified financial statement that the district court ordered Berry to produce. When we asked Berry's counsel at oral argument whether the tax returns Berry provided were complete, he replied that he is not a tax attorney. We will take that for a "no." Our own review of the record reveals that Berry utterly failed to comply with the district court's directive to provide proof of her impecuniousness. Without admissible evidence of poverty, the district court abused its discretion in finding that Berry could not afford to pay fees or damages to the Housing Center.

### B.

■ The district court purported to analyze the attorneys' fees question only to the extent that the Consent Decree provided for fees. Because the Consent Decree did not specifically provide for fees, the court declined to impose them. As we have already discussed, however, in a civil contempt proceeding, "a court may, at its discretion, order reimbursement of the complainant, as part of the civil relief, of the party's fees and expenses incurred in bringing the violation to the court's attention." *Premex,* 655 F.2d at 785. Another source of fees for the Housing Center was through the Fair Housing Act and the Civil Rights Act. *See* 42 U.S.C. § 3612(p) and 42 U.S.C. § 1988(b). The court did not consider the Housing Center's request for fees under these provisions, and thus did not decide whether the Housing Center was a prevailing party under those provisions, or whether Berry's poverty was a defense to an award of fees under the cited statutes. The court should therefore consider on remand whether fees are appropriate under these statutory provisions if it determines in its discretion that fees are not otherwise available for prosecution of the contempt action.

### C.

■ The final issue is whether the district court's refusal to order Berry to surrender her license was in error. The Housing Center contends first that Berry waived the defense that license surrender is an unenforceable penalty, because that is an affirmative defense that she did not plead or prove. The district court was in error, according to the Housing Center, to consider this affirmative defense *sua sponte.* Second, the Housing Center argued, license surrender was a remedy specifically provided for in the Consent Decree that Berry signed. Indeed, the

---

1. The Housing Center emphasizes the difference between compensatory damages and damages to coerce compliance, and urges us to find that poverty is never a defense to compensatory damages in a contempt hearing. We decline to draw this distinction in this narrow context because the court was exercising its equitable powers to reshape the Consent Decree to the extent the court found the Consent Decree was not operating to serve the "ultimate goals that are sought to be served." *See* December 5, 1997 Tr. at 7, 13. A court of equity has the power to modify a consent decree to adapt for changed circumstances. *Rufo v. Inmates of the Suffolk County Jail,* 502 U.S. 367, 383–84, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992) (party seeking modification of consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree; modification of a consent decree may be warranted when changed factual circumstances make compliance substantially more onerous). Thus, to the extent the Consent Decree required an award of compensatory damages to the Housing Center to reimburse it for staff time spent seeking compliance, the district court was free to modify the Decree to account for the changed circumstances of Berry's poverty. Of course, as before, the district court's finding of poverty must be supported by admissible evidence in the record.

Housing Center points out that the remedy of license surrender is contemplated by the Fair Housing Act, 42 U.S.C. § 3612(g)(5); the Illinois Human Rights Act, 775 ILCS 5/8–109(B); and the Illinois Real Estate Licensing Act, 225 ILCS 455/18.3. Thus, the provision is not an unenforceable penalty but a remedy sanctioned by the Consent Decree and a variety of applicable statutes. Berry counters that under Illinois law, a term fixing damages is an unenforceable penalty when the sole purpose of the provision is to secure performance of the contract. Because the Housing Center admitted the purpose of the license surrender provision was to coerce compliance with the consent decree, Berry contends it is an unenforceable penalty.

The answer to this conundrum lies somewhere between these two views. Each of the statutes cited by Housing Center contemplates license suspension if a realtor engages in discriminatory conduct. See 42 U.S.C. § 3612(g)(5) ("with respect to a discriminatory housing practice that occurred in the course of a business subject to a licensing or regulation by a governmental agency, the Secretary shall ... recommend to that governmental agency appropriate disciplinary action (including, where appropriate, the suspension or revocation of the license of the respondent.")); 775 ILCS 5/8–109(B) ("In the case of a respondent, operating by virtue of a license issued by the State ... who commits a civil rights violation, recommend to the appropriate licensing authority that the respondent's license be suspended or revoked."); 225 ILCS 455/18.3 ("When ... a licensee has illegally discriminated ... the Office of Banks and Real Estate ... shall suspend or revoke the license of that licensee in a timely manner."). Here, the district court noted that the Housing Center had not alleged that Berry was continuing to engage in racial steering, but rather that she had violated those parts of the Consent Decree that required her to pay damages and report on her customer contacts. Even

the Consent Decree drew a distinction between technical and substantive violations, the court noted, and Berry's violations had not gone to the substance of the Decree, that she not engage in racial steering. Thus, the court found that to the extent the Consent Decree required license revocation for failure to pay damages or failure to comply with reporting requirements, that provision was an unenforceable penalty.

We see no error in the district court's ruling. The court specified that if the Housing Center had evidence that Berry continued to engage in racial steering, it would hold a hearing and consider license suspension at that time. December 5, 1997 Tr. at 11. Thus, the court held open the possibility that the license forfeiture provision would be enforceable if Berry committed a more egregious breach of the consent decree, one going to its very purpose to prevent race-based discrimination. Id. ("if you find that there is something that you are able to pursue, that you can come in armed with evidence of continued substantive violation, in which event we will take a look at that from a factual point of view. And I am reserving judgment on whether that may in fact end up with the ultimate result of surrender of the license.") The court found that in this instance, "the punishment does not fit the crime," and was punitive in nature as opposed to compensatory. February 27, 1998 Tr. at 16. As such, the court found the provision violated the Illinois prohibition against penalties for breach of contract. See American Nat. Bank & Trust Co. of Chicago v. Regional Transp. Authority, 125 F.3d 420, 439–40 (7th Cir. 1997); Lake River Corp. v. Carborundum Co., 769 F.2d 1284, 1290 (7th Cir.1985) (doubtful cases are resolved in favor of classification as a penalty). On review, we agree that for minor violations, license surrender is an unenforceable penalty. We also agree, however, that if the Housing Center had proof of continued steering,

license surrender would be both enforceable and appropriate.

### III.

We therefore affirm that part of the district court's decision denying Housing Center's motion for surrender of Berry's real estate license. We vacate that part of the decision denying damages to Housing Center to compensate it for staff time expended in seeking compliance with the consent decree, and attorneys' fees. On remand, we direct the district court to hold a hearing to determine Berry's true financial state. Once that status has been ascertained, the court should exercise its discretion to determine whether to award Housing Center its attorneys' fees and staff time compensation, either under the authority of our case law allowing such an award in a civil contempt proceeding, or under the Fair Housing Act and the Civil Rights Act.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED WITH DIRECTIONS.