┌─────────────────────────────────────────────┐
│           **NONPRECEDENTIAL DISPOSITION**         │
│   To be cited only in accordance with Fed. R. App. P. 32.1   │
└─────────────────────────────────────────────┘

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued May 15, 2018
Decided June 25, 2018

**Before**

FRANK H. EASTERBROOK, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY C. BARRETT, *Circuit Judge*

No. 17-2171

| | |
|---|---|
| TELEDYNE TECHNOLOGIES IN-CORPORATED, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *Plaintiff-Appellee,* | |
| *v.* | No. 1:15–cv–01392 |
| RAJ SHEKAR, | Ronald A. Guzmán, |
| *Defendant-Appellant.* | *Judge.* |

## O R D E R

Teledyne Technologies fired Raj Shekar from his job as a marketing and sales manager. Shekar did not go quietly—he took Teledyne's property with him and flouted the district court's order that he return it. The court held him in civil contempt, but even that did not inspire his obedience. Instead of complying with the court's order, Shekar engaged in a campaign of defiance, deceit, and delay. The court's patience finally ran out: it found that Shekar had failed to purge himself of contempt and entered sanctions against him. Despite the utter lack of respect that Shekar has shown for the judicial process throughout this entire suit, he now asks us to reverse the district court's judgment. We affirm it.

I.

Teledyne hired Raj Shekar as a sales and marketing manager in June 2013 and fired him less than two years later. Shortly after terminating his employment, Teledyne discovered that Shekar had contacted and threatened Teledyne's potential customers; he had also initiated a large data transfer from Teledyne servers and retained possession of electronic equipment and data belonging to Teledyne. Teledyne sued Shekar in federal court, asserting common-law claims in tort and contract, as well as statutory claims under the Computer Fraud and Abuse Act, the Illinois Trade Secrets Act, and the Illinois Uniform Deceptive Trade Practices Act. It sought injunctive relief, compensatory and punitive damages, costs, and attorneys' fees.

Four days after Teledyne filed the suit, the district court entered a temporary restraining order directing Shekar to return his Teledyne-issued laptop computer, VPN token, projector, printer/scanner, and iPhone. The order specified that Shekar was to turn over the property unaltered. In addition, the order compelled him to respond to interrogatories that asked him, among other things, to identify any devices or drives that had been in his possession during a period covering the majority of his employment. The court gave Shekar five days to comply with the temporary restraining order. He did not do so.

The court scheduled a hearing on Teledyne's motion for a preliminary injunction, and when Shekar failed to appear, the court granted the motion. The preliminary injunction was broader than the temporary restraining order insofar as it required Shekar to produce *all* computers and other devices in his possession—not only those belonging to Teledyne. This meant that Shekar was obliged to turn over his personal computer for inspection. When Shekar failed to comply yet again, the district court granted Teledyne's motion for a show cause hearing to determine whether Shekar was in civil contempt.

As his first line of defense at the show cause hearing, Shekar made the far-fetched claim that he had never received proper notice of either the temporary restraining order or the preliminary injunction. But notice of the temporary restraining order had been sent to each of Shekar's thirteen known email addresses and hand-delivered to his home.[1] Shekar claimed that none of the thirteen email addresses

---

[1] Teledyne used a process server because FedEx said that Shekar's past conduct was so egregious it would no longer deliver to his home.

belonged to him; as a back-up argument, he asserted that his email addresses block all communications originating from @winston.com, the domain of Teledyne's counsel. The first argument was a blatant lie: Shekar had sent unauthorized ex parte communications to the court from some of the thirteen email addresses after the temporary restraining order had been issued. As for Shekar's second argument, the district court noted that "Shekar can hardly expect to be rewarded for willfully evading notice." Shekar's protest that he never received notice of the preliminary injunction is equally implausible. Teledyne sent notice to Shekar's home address, fifteen different email addresses, and a PO Box that Shekar had specifically identified as his preferred address for service.

When the show cause hearing shifted from notice to substance, the lies kept on coming. Two witnesses testified: Shekar and Daniel Roffman, a forensic computer expert whom Teledyne retained to analyze Shekar's laptop and iPhone. Following common forensic practice, Roffman analyzed Shekar's Teledyne-issued laptop by using an "image"—a verified exact replica—of it. (The physical laptop was in the possession of the Department of Defense Criminal Investigation Services for reasons not relevant to this appeal.) Roffman's analysis of the laptop image revealed that eleven different devices had been connected to the laptop, three of them on or after the date that Teledyne had fired Shekar. The district judge found that Shekar had failed to account for any of the devices that had been connected to the laptop after his termination. Shekar falsely denied that he had ever possessed two of them. As for the third, a hard drive, Shekar turned over a fake: it was made by the same manufacturer, but not only did its serial number differ from the missing device, the court observed that it appeared to be "totally blank … turned over to Teledyne fresh from the electronics store."

After hearing both witnesses, the court largely credited Roffman's disinterested and professional testimony and discredited Shekar's self-serving, unsubstantiated testimony. It had plenty of reason to do so—the record is replete with Shekar's flimsy, disingenuous, and contradictory explanations. For example, Shekar returned his company-issued iPhone, but the passcode he provided did not unlock it. The court found Roffman's conclusion that Shekar locked the phone more credible than Shekar's "conspiracy theories" about why it was Teledyne's fault that the passcode he provided did not work. Another example: after repeatedly insisting that he did not possess any Teledyne data or emails, Shekar offered a Teledyne email as an exhibit at the show cause hearing. Yet another: Shekar answered "none" to interrogatories inquiring whether he currently possessed any devices or hard drives that could be used to store data; this was demonstrably false based on Roffman's credible forensic analysis of Shekar's laptop.

And if all of this weren't enough, Shekar defiantly admitted that he had decided not to produce his personal computer for inspection, despite the court's unambiguous command that he do so. Shekar defended his choice by observing that the computer did not contain any Teledyne information. He appears to believe that this explanation serves as an excuse, rather than what it was: an outright admission that he failed to comply with the court's order.

Based on the evidence presented at the show cause hearing, the court found Shekar in civil contempt. The court gave him two weeks to purge himself of contempt and comply with the directives of the preliminary injunction. Teledyne was awarded the attorneys' fees and costs associated with the show cause hearing.

Shekar's first argument on appeal is that the court abused its discretion by finding him in civil contempt. He is wrong. The facts we have recounted here, and others we thought it unnecessary to repeat, speak for themselves. After the district court reasonably credited Roffman's testimony and discredited Shekar's, the obvious conclusion was that Shekar stood in civil contempt for failing to substantially comply with the terms of the preliminary injunction.

## II.

The two weeks the court gave Shekar to purge himself of contempt came and went. Instead of obeying the court's crystal-clear orders, Shekar spent the next year engaging in a campaign of resistance: he filed numerous unsuccessful emergency motions; threatened the court, its officers, opposing counsel, and expert witnesses; filed a frivolous appeal; successfully pleaded highly dubious health concerns to convince the very patient district judge to rescind an order for compulsory incarceration; and fired three different attorneys. By August of 2016, the district court was rightfully fed up. Finding that Shekar had repeatedly failed to purge himself of civil contempt, it entered sanctions against him.

Shekar's second argument on appeal is that the court abused its discretion by finding he failed to purge himself of civil contempt. Again, Shekar is wrong. The district court found that Shekar had still not sufficiently accounted for the three devices that were connected to his Teledyne laptop after his termination. He altogether failed to produce two of the devices, claiming that he had either lost or never received them, despite compelling forensic evidence to the contrary. And although he finally produced the third device—this time, with a serial number matching that of the missing hard

drive—he wiped it clean before turning it in. There were other failures too: Shekar never produced seven of the eight devices that had been connected to the laptop prior to his termination, he refused to provide access to his Teledyne email accounts, and he lied in his answers to interrogatories. Shekar offers no reason—other than his own discredited and unsubstantiated statements—why we should find that any of these factual findings are clearly erroneous. And on these facts, it was plainly within the court's discretion to find that Shekar remained in civil contempt.

### III.

The August 2016 finding that Shekar had failed to purge himself of civil contempt was accompanied by sanctions against him. The court noted that every effort to secure Shekar's compliance—multiple contempt findings, large attorneys' fees awarded to Teledyne, threats of compulsory imprisonment—had been met by unrelenting and unrepentant dishonesty. It sanctioned him by entering default judgment for Teledyne on all of its claims, granting a permanent injunction against Shekar, dismissing Shekar's counterclaims against Teledyne, and ordering Shekar to pay the reasonable attorneys' fees and costs that Teledyne had incurred litigating the contempt issue. In the end, the district court awarded Teledyne $366,956.18 in attorneys' fees; $5,817.50 in damages on its Computer Fraud and Abuse Act claim; $549 in compensatory damages and $1,098 in punitive damages for the willful conversion of Teledyne's projector; and $67,186.70 in additional attorneys' fees under the Illinois Trade Secrets Act and the Illinois Uniform Deceptive Trade Practices Act, which grant attorneys' fees to a prevailing party when the defendant acts willfully or maliciously.[2]

Shekar challenges these sanctions as an abuse of the district court's discretion. The district court has wide latitude to craft civil contempt sanctions to coerce obedience to the court's orders and compensate the plaintiff for losses. *Connolly v. J.T. Ventures*, 851 F.2d 930, 932–33 (7th Cir. 1988) (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303–04 (1947)). It did not exceed its authority here.

We'll start with the largest penalty: the $366,956.18 in contempt-related attorneys' fees. These were calculated based on the presumptively reasonable "lodestar method," which multiplies the hours reasonably expended by a reasonable hourly rate. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Shekar gives us no reason to

---

[2] *See* Illinois Trade Secrets Act, 765 ILCS 1065/5; Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/3.

question the reasonableness of either the total number of hours or the hourly rates used to calculate the fee award. His objection boils down to a complaint that he will have to pay a lot of money. But Shekar lies in a bed of his own making. The extraordinary amount is due solely to Shekar's decision to drag opposing counsel (not to mention the court) through a disingenuous legal battle rather than comply with the court's clear order. Indeed, the court repeatedly warned Shekar that he was racking up attorneys' fees every time he drew the proceedings out instead of obeying the preliminary injunction. An award of $366,956.18 is high, but not unreasonable in light of Shekar's one-man legal circus.

Shekar also claims that the district court abused its discretion by awarding Teledyne damages after entering default judgment for Teledyne on all of its claims, but the district court was well within its discretion to impose this sanction. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991) (noting that courts have the inherent power to "fashion an appropriate sanction for conduct which abuses the judicial process"). Given Shekar's outrageous conduct throughout the litigation, we find no error in either the entry of default judgment to Teledyne or in the amount of damages awarded.

The court gave Teledyne $5,817.50 in damages on the Computer Fraud and Abuse Act claim, which was the amount Teledyne expended on forensic analysis. The record justified this amount: Teledyne documented the time and money it spent identifying the problems that Shekar's antics caused its servers. Shekar offers no evidence that this calculation is in error. The district court also awarded Teledyne $549 in compensatory damages and $1,098 in punitive damages for Shekar's willful conversion of its projector. The record justifies this amount as well: the compensatory damages represent the projector's uncontested value, and Shekar makes no argument as to why the punitive damages are unreasonable. Finally, the district court awarded Teledyne $67,196.70 in additional attorneys' fees as the prevailing party under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Trade Secrets Act. Illinois law entitles Teledyne to these fees, and Shekar does not challenge the amount as unjustified. In sum, the district court did not abuse its discretion in awarding damages and attorneys' fees on Teledyne's legal claims.

Shekar's various other challenges to the district court's sanctions similarly fail. These other sanctions—dismissing Shekar's counterclaims and granting Teledyne a permanent injunction—were well within the district court's discretion.

## IV.

Finally, Shekar claims that he was denied discovery, hearings, and a proper opportunity to cross-examine witnesses throughout the proceedings related to his various objections on appeal. This argument is meritless. Shekar failed to take advantage of the multiple opportunities the district court provided to challenge the court's contempt findings. Furthermore, it is well documented that Shekar did nothing but abuse the legal process throughout the entirety of this case.

\* \* \*

Shekar has demonstrated nothing but disrespect, deceit, and flat-out hostility toward the court, its officers, and opposing counsel during the three years this case has been pending. He has no cause to complain about the district court's eminently reasonable orders. In fact, we will send a copy of this order to the United States Attorney so that he may consider whether a criminal prosecution for perjury or contempt of court is appropriate.

The judgment of the district court is AFFIRMED.