### MARION COUNTY JAIL INMATES, Plaintiffs,

v.

### Sheriff Frank ANDERSON, Defendant.

### No. IP72–0424–C–B/S.

United States District Court,
S.D. Indiana,
Indianapolis Division.

July 10, 2003.

See, also, 2002 WL 1042167.

Kenneth J. Falk, Indiana Civil Liberties Union, Indianapolis, IN, for Plaintiff.

Kevin Charles Murray, Locke Reynolds LLP, Anthony W. Overholt, Office of Corporation Counsel, Indianapolis, IN, for Defendant.

### ORDER FINDING DEFENDANT IN CONTEMPT AND IMPOSING SANCTIONS AS WELL AS COERCIVE MEASURES TO SECURE FUTURE COMPLIANCE

BARKER, District Judge.

This matter is again before the Court on Plaintiffs' Petition to Hold Defendant in Contempt. Plaintiffs allege, in support of this motion, that Defendant Sheriff Frank Anderson has not complied with this Court's prior orders directing that each prisoner in the Marion County Jail be provided a bed or bunk above the floor and that all prisoners be treated in a safe and humane manner. While essentially conceding that he is in violation of this Court's prior orders, Sheriff Anderson contends that contempt sanctions are inappropriate based on a showing that he has attempted in good faith to comply with the Court's orders. Numerous hearings have been conducted by the Court on the issue of contempt (*E.g.*, IP 72–424–C–B/F, Docket No. 166), the most recent occurring on July 8, 2003.

■ To prevail on a motion for civil contempt, the movant must prove by "clear and convincing evidence" that the non-movant violated a court order. *Stotler and Co. v. Able*, 870 F.2d 1158, 1163 (7th Cir.1989); *see also Goluba v. School Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995). The district court "must be able to point to a decree from the court 'which sets forth in specific detail an unequivocal command' which the party in contempt violated." *Stotler*, 870 F.2d at 1163 (citations omitted). The district court does not, however, "ordinarily have to find that the violation was 'willful'" and may find a party in civil contempt if that party "has not been 'reasonably diligent and energetic in attempting to accomplish what was ordered.'" *Id.* (citations omitted).

We do not find the Sheriff's failures to be the result of willful behavior; the failures described and elaborated upon in the filings and at the hearings represent the cumulative results of derelictions of duty in every branch and at every level of county, city, and state government. However, the fact remains that the Sheriff is not in compliance with the substance of our prior

orders—that every prisoner be afforded bed space above the floor and that all prisoners be treated in a safe, human manner. Therefore, Defendant Sheriff Frank Anderson, having failed to comply with this Court's prior orders, is hereby held *IN CONTEMPT*, pursuant to which an appropriate sanction should issue.

■ A court passing on a civil contempt petition may impose sanctions to redress harm that has been caused or to secure compliance with its orders, but may not exact punitive damages. *E.g. South Suburban Housing Center v. Berry*, 186 F.3d 851, 854 (7th Cir.1999); *In the matter of Maurice*, 73 F.3d 124, 127, 128 (7th Cir. 1995); *Connolly v. J.T. Ventures*, 851 F.2d 930, 933 (7th Cir.1988). In an action regarding prison conditions, any court-ordered prospective relief to remedy an ongoing constitutional violation must be narrowly drawn, represent the least intrusive means necessary to correct the violation of the constitutional right, and extend no further than necessary to correct such violation. *See* 18 U.S.C. § 3626. Our prior orders directing that inmates be provided with bed space off the floor and safe, humane treatment satisfied these statutory requirements. However, these statutory requirements do not control the scope of remedies available to cure contempt stemming from a party's failure to comply with a prior court order. Accordingly, the remedies mentioned herein are designed both to remedy the contempt and to coerce compliance with our prior orders.

Over the course of recent weeks and months, while the Court has had Plaintiffs' motion under advisement, significant progress has been achieved on all fronts and by all involved in dealing with the jail conditions problem. Despite these efforts, however, Defendant's remediations have fallen short and he remains out of compliance with our prior orders. Indeed, as recently as July 2, 2003, one corrections consultant noted that, after visiting more than 900 jails and prisons in North American in his 31 years of experience, "the conditions ... in Marion County were among the worst" he has ever seen. *See* Joint Stipulation, July 7, 2003, Exh. 7, Letter from Rod Miller. Moreover, substantial time has elapsed between the original order directing the Sheriff to satisfy constitutional standards with regard to certain conditions in the jail and the very recent steps taken to achieve those conditions, which further underscores the need for judicial action at this time to ensure continued progress. Some of the recent improvements undertaken are not yet complete. Accordingly, this order imposes remedial measures to cure the ongoing contempt, while recognizing the efforts underway and allowing time for them to be completed before further, specific sanctions will attach.

Therefore, having adjudged Defendant in contempt of our prior orders in this matter in these two respects—with regard to bed space above the floor and the safe, humane treatment of prisoners, the Court now issues the following additional orders to enforce compliance with constitutional requirements. Punitive sanctions for Defendant's past contempt shall not be imposed at this time.

## I. Bed space

The Court previously ordered that the Sheriff must provide all inmates of the Marion County Jail with bed space above the floor. This has not been accomplished. Many inmates must sleep in plastic, molded pallets on the floor ("stack-a-bunks") or on inferior and often filthy mattresses on the floor, some on picnic tables, and some directly on the floor. The number of inmates housed in the jail frequently far exceeds the number of beds above the floor. Having adjudged that the Sheriff is in contempt of this order, the Court now

directs that the Sheriff take the following remedial steps:

A) The Sheriff must contract for and utilize all available bed space in Marion County Jail II to house prisoners, which means that the emergency funding recently allocated to acquire bed space in Jail II must be made permanent and continue so long as the number of prisoners exceeds the number of available beds in Jail I. It is our understanding that a fiscal ordinance to accomplish such funding is scheduled for final consideration by the City County Council on July 21, 2003, and is expected to pass.

B) Failure to provide the necessary funding through the legislative appropriations process to acquire access to the Jail II space shall result in the imposition of a fine at the rate of $40 per day per unfilled bed,[1] which payments shall be made into an account established by the Court that will be used to purchase the space, until all available beds at Jail I and Jail II are utilized.

C) Space existing in the Marion County Lock-up[2] that is not required for housing of prisoners on a short-term basis, as referenced in the Court's prior orders dealing with population limits in the Lock-up, and is therefore available for longer-term use, shall within 30 days be adapted and utilized for that purpose at a rate that complies with the Jail Inspector's standards and permissible utilization limits (i.e. in Section C5B of the Lock-up space, jail standards permit bed occupancy of 24). To the extent that utilization of this space is contingent upon there being sufficient

staffing to oversee the reconfigured Lock-up area, the Sheriff must deploy the required staff to ensure the safety of the inmates housed in that area.

To the extent that the Sheriff is impeded in his ability to provide necessary staffing levels because of funding shortfalls from County reserves, a fine shall be levied in the amount of $40 per day for each bed in the Lock-up that goes unfilled (consistent with the Jail Inspector's figure regarding the Lock-up's bed space capacity), which sums shall go into the separate account established by the Court from which the cost of providing the necessary staffing will be paid. The Jail Inspector's bed/space estimates, based on overall square footage, will control the total amount of this monetary sanction.

In no event should the Court's prior orders regarding Lock-up occupancy limits be violated in order to comply with this Order.

D) Sentenced inmates housed in the Jail who have been designated for incarceration in a Department of Corrections ("DOC") facility must be transferred forthwith from the Marion County Jail forthwith to their DOC designated facility and, in any event, may not remain at the Marion County Jail for more than five business days after being sentenced.

E) Inmates in the care, custody, and control of the DOC who must be returned to the Marion County Jail for additional court appearances shall not be lodged within the Jail facilities overnight, requir-

---

1. According to Jail Inspector Paul Downing, the cost of housing one inmate in the Marion County Jail II is $39.13 per day.

2. In reference to the Court's prior order regarding weekly population reports at the Lock-up, hereafter the Sheriff is relieved of the duty to file with the Court the detailed backup documentation, that is, the lists of

prisoner names and length of time each spent in the Lock-up. The population summaries of the Lock-up and the jail population data reflecting overall capacity will suffice for the Court's purposes. However, the Sheriff shall continue to prepare and retain in his departmental files the detailed supporting documentation so that the information is available for review by the Court or the parties at any time.

ing them to utilize a bed, unless the Jail is in compliance with this Order and can accommodate all the prisoners at that time by providing beds for everyone.

F) By September 1, 2003, the following systemic improvements and innovations (hereinafter collectively referred to as "September 1 improvements") are expected to be in place and operational, yielding synergistic, positive results in terms of reducing the Marion County Jail overall occupancy numbers:

1) expansion of home detention/work release programs as pretrial alternatives to incarceration;

2) acceleration of the timetable for preparation of presentence reports;

3) a system to transfer and coordinate criminal cases within divisions of the Marion Superior Court to allow for consolidated processing of multiple prosecutions involving an individual defendant; and

4) formation of the Criminal Justice Council ("CJC") to provide governmental oversight and coordination and policymaking on issues relating to jail overcrowding and jail conditions.

F) The newly formed CJC is strongly encouraged to undertake immediately a study of any and all additional jail space options, with due regard to their corresponding costs, so that an inventory of available overflow space is in place should demand for Marion County jail space exceed that which is available in Jails I and II on a sustained basis. This study should include consideration of the availability of other county jails, neighboring states' jails, leased space available from the DOC, and other makeshift space that can be quickly accessed to house prisoners on a temporary, emergency basis.

G) The newly formed CJC is strongly encouraged to develop a computer tracking system for all jail inmates in order to permit precise data on the number and identity of each and their whereabouts in the system.

H) Following the full implementation of the September 1 improvements, the Sheriff shall undertake promptly a full review and revision as appropriate of the classification system for all inmates in the Marion County Jails I and II.

I) From the date of this Order until October 1, 2003, the permissible population limit in Jail I, based on the availability of beds above the floor, is *1,310*. When that number is reached, no further inmates may be placed in that facility.

J) After September 1, 2003, on any occasion when the bed-occupancy rate in the Marion County Jail reaches *1,134* inmates, the Sheriff must notify the presiding judge of the Marion Superior Court and the chair of the CJC that a jail emergency exists and request that the judge undertake immediately all appropriate steps to mobilize and infuse judicial, prosecutive, and public defender resources to consider the immediate release eligibility on bail or under other court supervision of inmates currently detained in the Marion County Jail, toward the end of averting a situation when the number of permanent beds occupied by inmates exceeds 1,310. When population levels come within 175 of the final permissible limit, that constitutes a "jail emergency" as used in this context.

The Presiding Judge of the Marion Superior Court, in conjunction with the CJC, is strongly encouraged to devise a plan for dealing with said jail emergencies at the earliest possible time so that it is in place and in ready status as of September 1, 2003.

K) Between September 1, 2003, and April 1, 2004, based on the increased efficiencies and innovations referenced in Section E above, particularly with the Arrestee Processing Center, which will have

available to it and will utilize judicial services on a 24–hour–a–day, 7–day–a–week basis, the number of inmates housed in the Marion County Jail must be incrementally reduced from 1,310 to 1,135 at a rate not to exceed the following monthly population limitations:

| September 1, 2003 | 1,310 |
| October 1, 2003 | 1,285 |
| November 1, 2003 | 1,260 |
| December 1, 2003 | 1,235 |
| January 1, 2004 | 1,210 |
| February 1, 2004 | 1,185 |
| March 1, 2004 | 1,160 |
| April 1, 2004 | 1,135 |

Any violations of these incremental reductions will result in fines being assessed at the rate of $40 per day per inmate for each inmate over the prescribed bed capacity. In complying with this count, the bed provided for each inmate must be above the floor. Thus, the use of "stack-a-bunks" will not suffice as substitutes. The monies paid as fines will be deposited in the separate Court-maintained fund. *See ¶ L infra.*

The CJC and the Presiding Judge of the Marion Superior Court are strongly encouraged to devise a monitoring plan to provide the appropriate alerts when these incremental population limits are threatened to be exceeded so that immediate diversionary steps can be taken to avert violations. This will be especially critical in anticipating and dealing with the influxes of detentions that occur on weekends and holidays, according to historical data.

L) All the above-referenced fines shall be computed on a daily basis, and the total amounts shall be deposited weekly in a separate fund, administered and maintained by this Court and overseen by a Special Master, from which allocations shall be made for uses relating to compliance with the Court's prior orders, e.g., to pay the costs of additional bed space, if any can be found to house Marion County inmates; to underwrite the expense of additional jail staffing; to increase or expand the use of home-detention in lieu of incarceration; and to provide improvements in inmate welfare. This list is intended to be illustrative, not exhaustive. Expenditures shall be made upon application to or at the discretion of the Special Master, with approval by the Court.

M) The Special Master, charged with overseeing the fund established by the fines described above, shall be appointed by separate order of the Court, and the fees incurred in hiring a special master shall be borne either by the Fund or by the Sheriff.

## II. Safe and humane treatment

■ The Court also previously ordered that the Sheriff must assure that all inmates of the Marion County Jail are treated in a safe and humane manner. This has not been accomplished. The record is replete with examples of unhealthy, unsanitary, dangerous, offensive conditions, which we will not further elaborate on here. Having adjudged the Sheriff in contempt of this order, the Court now imposes sanctions in the form of the following remedial steps:

A) Within 30 days of the entry of this Order, the Sheriff shall obtain from the Marion County Building Authority and provide to the Court a breakdown of expenditures made by the Building Authority to repair and maintain the Jail from the $1 million annual rent payments from the Marion County Sheriff. The report should reflect expenditures over the past eighteen months, and include a detailed explanation of the specific investments made at the jail to make it a safe and humane environment. The Court seeks in this fashion to ensure that the rents paid by the Sheriff are devoted to the upkeep of the jail facility and are not being diverted to other governmental uses. In addition, the Sheriff is directed to determine, with the assistance

of the Building Authority, the order of priorities for addressing maintenance and repair requests by the Marion County Jail, toward ensuring that the needs of prisoner health, safety, and sanitation receive the highest priority in the expenditure of those monies.

B) Within 30 days of this Order, the Sheriff shall report to the Court on the comparative per capita costs of housing inmates at Marion County Jails I and II, toward the end of ensuring that there does not exist a two-tiered system.

C) Medical care

1. The plan of the Operational Review Committee, composed of, among others, representatives of Correctional Medical Services, Inc., Wishard Health Services ("Wishard"), Midtown Community Mental Health Center, Wishard detention, and the Marion County Jail, who will meet biweekly to conduct continuous review and improvement operations at the jail is hereby approved. *See* Joint Stipulation, July 7, 2003, Exh. 8. The formation of this consortium is deemed a very positive step, and this group is encouraged to continue to convene *for the purposes of making further recommendations as needed and implementing the agreed-upon changes. Special and prompt attention hopefully will be given to the need to improve pharmacy services for inmates requiring ongoing medications.

2. The parties stipulate that the recent improvements to medical care and the plans for further improvements comply with this Court's prior orders. Their stipulation is approved.

3. The Court recommends that the Marion Superior Court Administrator, Mr. Renner, or any other appropriate representative overseeing the new Arrestee Processing Center, consider ways in which appropriate medical screenings can be included as part of the initial processing.

4. In view of the fact that the Jail medical office currently is being staffed 24 hours a day, 7 days a week, the Court encourages the Operational Review Committee referenced above to develop a protocol that would permit patients to be personally seen on a 24–hour basis as medical needs arise. That is, because staffing is available, the clinic would operate around the clock rather than only during the daytime hours. This would replace the paper triage system currently in place for after-hours care. In addition, the Committee is encouraged to address the need for protocols relating to the care of inmates with long-term, chronic injuries or illnesses, more specifically, the need to set standards for determining suitability for transfer to the Wishard Hospital detention unit for extended care rather than attempting to provide intensive medical treatment/oversight in the Marion County Jail.

D) Food

1. The Court notes with approval the recent replacement of contaminated food trays and the planned installation of a new food service line by July 18, 2003; these represent significant improvements to the food service conditions at the jail.

2. The current 70–cent per inmate-per meal allotment implemented by the Sheriff pursuant to directives from the State Board of Accounts is constitutionally inadequate in that it deprives inmates of their entitlement to safe and humane treatment with regard to daily nutrition. Indiana Code § 36–8–10–7 provides that the daily meal allowance per inmate in all Indiana jails shall not exceed $2. The State Board of Accounts exempts Marion County from its statewide prisoner meal allotment schedule. Thus, by statute and by regulation (Indiana Code § 36–8–10–7), Sheriff Anderson is authorized to spend up to the $2 maximum per inmate per meal. Therefore, the Sheriff is ordered to upgrade the

per inmate-per meal allotment to provide a safe and humane level of daily nutrition to all Marion County jail inmates by amending its contractual arrangements with its food services vendor(s).

3. The Sheriff, in consultation with a certified nutritionist who oversees menus at the jail, shall upgrade the quality of the fare served to prisoners in terms of quantity (as appropriate) and nutritional content. The sample menu that was tendered as an exhibit at the July 8, 2003 hearing appears to reflect a healthy and diverse array of food; in any event, we rely on the judgment of the certified nutritionist. The Court's concern, therefore, is primarily with those times when exceptions must be made to the approved menu; substitutes to the certified menu fare, when required, should be of comparable quality and quantity with due regard to the nutritional and caloric needs of the individual inmates.

4. Given the inadequacy of the space allocated for the kitchen and food preparation areas of the jail, the kitchen facilities must be shut down for 12 hours every two weeks to allow for thorough and complete cleaning. During these 12–hour hiatuses, the Sheriff must contract with an outside vendor to prepare food off site that satisfies the standards of the certified nutritionist.

5. At the earliest feasible time, the Sheriff shall engage consultants to determine the feasibility of preparing all food for the prisoners off site and using the Jail's limited kitchen space only for purposes of distributing food, rather than its preparation for the general jail population. The Sheriff shall submit a report on the feasibility of this plan, and his proposed response, by December 31, 2003.

6. Regardless of whether off-site food preparation can be instituted, the Sheriff shall, with the proper support from consultants, prepare a plan for the complete overhaul of the jail kitchen facilities, which includes acquiring new equipment and imposing other efficiencies on the area. This plan with the Sheriff's recommendations shall be submitted to the Court by December 31, 2003.

E) Recreation

1. The parties have stipulated that recreation is now available to all those inmates who seek it. The Court approves this stipulation.

2. The Sheriff shall nonetheless create a plan to expand the kinds of recreational options available to inmates and a schedule that would allow for expanded hours of participation. This plan should address the problems that deter participation by many inmates, i.e., the loss of property or other adverse consequences when they leave their cells or cellblocks for these periods of time. This plan shall be submitted to the Court by December 31, 2003.

3. Inmates serving extended periods of incarceration should be permitted incrementally more time for recreation, as compared to those held for only short periods of time.

F) Cleanliness

1. To ensure safe and humane conditions through proper hygiene, the Sheriff is directed to devise daily/weekly schedules to ensure regular cleaning and maintenance of all inmate residential areas (cellblocks, Lock-up, dorms, etc.). To facilitate the process, to the greatest extent possible, all inmates in a particular area should be removed periodically from that particular area to permit thorough cleaning to occur. Consideration should be given to engaging non-correctional officers and civilian employees (as was done in the staffing of the commissary) to oversee and conduct the cleaning; these cleaning tasks may nonetheless be performed by a subset of inmates.

2. Correctional Medical Services, Inc. should be consulted for standards for screening those individuals who will be required to participate in cleaning activities, similar to the methods of screening kitchen workers, to ensure against employing persons suffering with allergies, physical incapacities, etc.

G) Department of Justice reports

1. The Sheriff has informed the Court of two Department of Justice studies—one on jail staffing and one on the Marion County criminal justice system—currently underway and scheduled to be completed in the coming weeks. Within one week of the receipt of those studies, the Sheriff shall file the reports with the Court. Within one week of filing the reports with the Court, the Sheriff shall file his reactions/responses to the reports, stating his proposed course of action, in light of their findings.

H) No-contact visits

1. In order to relieve the serious staffing shortages at the Jail, effective the date of this Order, the previous order of this Court directing the adoption of a Marion County Jail contact visitation policy is rescinded. Steps should be undertaken immediately to provide a fair and adequate non-contact visitation arrangement, with full implementation occurring within 30 days.

2. In addition, effective the date of this Order, the Sheriff shall undertake to install a new system of video surveillance, both inside and outside the jail, and a new system of audio technology to permit electronic communications between prisoners in the cellblocks and Jail staff and guards.

I) Miscellaneous

1. The Court hereby requests that the County Auditor provide assurance that the monies paid into the general fund by the United States Marshals Service for the housing of federal prisoners are allocated in their entirety to the Sheriff's budget for the benefit of inmates.

2. The payments by the United States Marshals Service shall not result in offsetting deductions in the Sheriff's budget which would have the effect of negating the allocation of these funds.

## III. Summary

Summarized below are the operative dates and corresponding obligations created by this Order:

| | |
|---|---|
| July 21, 2003 | Anticipated final vote by City County Council on fiscal ordinance for Jail II space funding |
| August 11, 2003 | Modification of Lock-up completed, pursuant to Jail Inspector's limitations; Building Authority report submitted to the Court; Sheriff's report on per capita expenditures for inmates in Marion County Jail I and II; implementation of non-contact visitation system |
| September 1, 2003 | Arrestee Processing Center online; expanded home detention/work release program; changes to pre-sentence report procedures; fully implemented system to transfer and coordinate criminal cases within divisions involving a single defendant; and active participation of the CJC |
| October 1, 2003 | Jail bed capacity reduced to 1,285 |
| November 1, 2003 | Jail bed capacity reduced to 1,260 |
| December 1, 2003 | Jail bed capacity reduced to 1,235 |
| December 31, 2003 | Filing of Sheriff's feasibility report/plan for off-site food preparation; a plan for kitchen overhaul; and a study of/proposal for expanded recreational opportunities |

| | |
|---|---|
| January 1, 2004 | Jail bed capacity reduced to 1,210 |
| February 1, 2004 | Jail bed capacity reduced to 1,185 |
| March 1, 2004 | Jail bed capacity reduced to 1,160 |
| April 1, 2004 | Jail bed capacity reduced to 1,135 |

B) This Order and these requirements shall remain in effect until further order of the Court. Defendant Sheriff Frank Anderson is hereby ordered to distribute copies of this Order to all appropriate officials within the Sheriff's Department, to the judges serving as members of the Executive Committee of the Marion Superior Court for further distribution to all judges of the Marion Superior Court, to the Marion County Prosecutor, to the Marion County Public Defender, to the members of the CJC, to the Marion County Auditor, to the members of the Operational Review Committee, and to the members of the City County Council.

It is so ORDERED this ___ day of July, 2003.